# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-CT-00404-SCT

*MICHELLE FRADELLA AND GBS PROPERTIES,*
*LLC, d/b/a PRUDENTIAL GARDNER REALTORS*
*("PRUDENTIAL GARDNER")*

*v.*

*JAMES E. SEABERRY AND WIFE, ROSELLA*
*M. SEABERRY*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 02/01/2005 |
| TRIAL JUDGE: | HON. SEBE DALE, JR. |
| COURT FROM WHICH APPEALED: | PEARL RIVER COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | W. EDWARD HATTEN, JR. |
| | FRANK D. MONTAGUE, JR. |
| ATTORNEY FOR APPELLEES: | RICHARD C. FITZPATRICK |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED. THE JUDGMENT OF THE CHANCERY COURT OF PEARL RIVER COUNTY IS REVERSED, AND THIS CASE IS REMANDED TO THAT COURT WITH DIRECTIONS TO COMPEL THE PARTIES TO SUBMIT TO ARBITRATION CONSISTENT WITH THIS OPINION - 03/22/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1. Aggrieved by the chancery court's denial of their motion to compel arbitration pursuant to the provisions of a real estate contract, the real estate agent and her agency appealed to this Court. We assigned this case to the Court of Appeals, which affirmed the judgment of the Chancery Court of Pearl River County. Finding that the arbitration clause is valid and enforceable, we reverse the judgment of the Court of Appeals and remand this case to the Chancery Court of Pearl River County with directions to compel the parties herein to submit to arbitration consistent with this opinion.

## FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶2. Sammy and Joy Germany desired to sell their home on Global Lane in the City of Picayune, which is situated in Pearl River County. On February 18, 2004, the Germanys listed the property with Michelle Fradella, an agent associated with Prudential Gardner Realtors.[1] The Germanys and Fradella arrived at a sale price of $319,900 for what was described as an 18-acre lot. James and Rosella (Rose) Seaberry became interested in the purchase of the Germanys' property, and the Germanys and the Seaberrys entered into a written, dual-agency contract whereby they agreed that Fradella and her agency would serve in the role of a dual agent for both the Germanys and the Seaberrys. On February 29, 2004, the Seaberrys executed a written Agreement to Purchase or Sell (Agreement) wherein they

---

[1]GBS Properties, LLC, is a foreign limited liability company that does business in Mississippi as Prudential Gardner Realtors. Michelle Fradella is the Prudential Gardner real estate agent who was involved in this transaction; therefore, for the sake of clarity, unless it is necessary to refer separately to Fradella or Prudential Gardner, we will simply refer to Fradella and Prudential Gardner Realtors jointly as "Fradella."

2

offered to purchase the Germanys' property (described as 18 acres) for the sum of $300,000, but this offer was contingent upon the Seaberrys selling their home in New Orleans, Louisiana. This Agreement was signed by Fradella on behalf of Prudential Gardner.

¶3.     By way of a written counter-offer dated March 2, 2004, the Germanys rejected the Seaberrys' offer, but counter-offered to sell their property for the sum of $317,000. On March 3, 2004, the Seaberrys signed the written counter-offer, thus accepting the terms, including the purchase price of $317,000.[2]  Likewise, as opposed to the previous 18-acre description, the property was described as "16.68 Acres, +/–." On March 4, 2004, Fradella faxed to Rose Seaberry a copy of the counter-offer "and map."

¶4.     Subsequently, the property was appraised for $350,000 and was described in the appraisal as being only 13.52 acres. By the time the Contract for the Sale and Purchase of Real Estate (real estate contract) was executed by the parties on April 19, 2004, the Germanys and the Seaberrys had agreed on a purchase price of $346,500.[3]  Although the real estate contract was executed by the Seaberrys and the Germanys, neither Fradella, nor anyone on behalf of Prudential Gardner signed this real estate contract.  Under the heading

---

[2]Of course, there were other terms listed in the counter-offer, as well as the other documents discussed in this opinion, but we will discuss only those contractual terms which are relevant to today's discussion.

[3]We note that the record reveals two copies of the identical real estate contract, with one copy of the real estate contract being initialed and signed by only James and Rose Seaberry, and the other copy of the real estate contract being initialed and signed by only Sammy and Joy Germany.  Thus, the record does not contain a copy of the real estate contract revealing the initials and signatures of the Seaberrys and the Germanys on the same document. However, the parties do not assert this fact as an issue.

3

"Legal Description" contained in the real estate contract, was the phrase, "As Per Title." In other words, no acreage amount for the property was stated. Fradella did not tell the Seaberrys that the description submitted to the title insurance company described the property as being only 12.70 acres, which acreage was obviously considerably less than the 16.68 acres stated in the counter-offer, and also less than the 13.52 acres stated in the appraisal.

¶5.    The Seaberrys sold their New Orleans home and closed on the Global Lane property. Approximately two weeks after the closing, Fradella provided the Seaberrys with a copy of the appraisal describing the property as being only 13.52 acres. The Seaberrys then hired a surveyor and learned that the deed description of the property was only 12.70 acres.

¶6.    The Seaberrys filed suit on September 28, 2004, in the Chancery Court of Pearl River County, Mississippi.[4] In their first responsive pleading filed in this cause, Fradella and Prudential Gardner asserted as the "First Defense" in their Separate Joint Answer and Defenses that the case should be dismissed and the matter submitted to arbitration pursuant

---

[4]The Seaberrys' original suit in the Chancery Court of Pearl River County, named as defendants "Michelle Fradella, GBS Properties, L.L.C., d/b/a Prudential Gardner Realtors, Sammy Clark Germany and wife, Joy Morgan Germany, Individually and as Co-Trustees of the Germany Family Revocable Trust, April Pulley, Greystone Mortgage Co., L.L.C., Nations Title Agency of Mississippi, Inc., formerly Advantage Title, Inc. and Option One Mortgage Corporation." Further, the Seaberrys' claims included breach of contract, rescinding the sale, accounting, damages, temporary restraining order, and preliminary injunction. However, Fradella and Prudential Gardner are the only defendants participating in this appeal, and the chancellor's denial of Fradella's motion to compel arbitration is the only issue before this Court today.

4

to the terms of the applicable real estate contract.[5]  Shortly thereafter, Fradella filed a separate motion to compel arbitration, and two days later, Prudential Gardner filed a written joinder, thereby joining Fradella's motion to compel arbitration.

¶7.    The Chancery Court of Pearl River County, Chancellor Sebe Dale, Jr., presiding, timely considered this issue and entered a thorough written memorandum opinion, based on "the briefs of the parties, the authorities cited by each, and the documents utilized by the parties in the underlying transaction insofar as those documents are pertinent to the issues raised by the motion and response thereto."  Chancellor Dale also stated that he had examined and considered the original complaint filed by the Seaberrys.  Additionally, the chancellor stated that the issue before him concerned "solely the motion by Fradella, joined by Prudential [Gardner], seeking to compel arbitration instead of litigation of the issues raised by the Seaberry complaint." In the end, the chancellor denied the motion to compel arbitration, and we briefly discuss here the chancellor's reasoning, as revealed in his memorandum opinion:

> It appears that three (3) basic documents present the foundation for the transaction undertaken between Seaberry and Germany.  The first document is an AGREEMENT TO PURCHASE OR SELL dated 2/29/04, signed by both James and Rosella Seaberry, submitted to and received by Michelle Fradella proposing purchase by Seaberry of the subject property referred to as 31 Global Lane.[6]  The second document is a COUNTER OFFER signed by both

---

[5]We will set out in detail the applicable provisions of the real estate contract of April 19, 2004, including the arbitration clause, in the course of our discussion.

[6]This document was signed by Fradella, but was not signed by the Germanys because they did not accept the Seaberrys' offer.

5

the Seaberrys and also by Sammy Germany and Joy Germany dated and signed 3-2-04 and 3-3-04, respectively. The third document is a CONTRACT FOR THE SALE AND PURCHASE OF REAL ESTATE dated April 19, 2004 and signed only by James E. Seaberry and Rosella Seaberry.[7] The third document is the only document which contains any reference to, mention of, or undertaking to articulate *mandatory arbitration*, that appearing in paragraph 26 thereof, which is quoted verbatim by Fradella in her motion.[8] It is noteworthy that the same document sets forth in paragraph 11 thereof specific and enumerated rights of both the Seller and the Purchaser to initiate and pursue litigation in a court of competent jurisdiction in the event of breach of contract by either said party.

(Emphasis in original)

¶8.     In denying Fradella's motion to compel arbitration, the chancellor primarily relied on this Court's decision in *Parkerson v. Smith*, 817 So. 2d 529 (Miss. 2002), and stated, inter alia, that one who was not a signatory to a contract could not take advantage of an arbitration clause within that contract. Additionally, Chancellor Dale found that paragraph 11 of the real estate contract allowed for litigation to settle disputes between the Seaberrys and the Germanys, and that paragraph 26, which mandated arbitration as the forum to settle disputes between either the Seaberrys and Fradella or the Germanys and Fradella, created an ambiguity concerning whether the Seaberrys agreed to arbitrate any of their claims against

---

[7]This finding by the chancellor, if not erroneous, is at the very least, ambiguous. As we have already noted, another, identical contract for the sale and purchase of real estate was initialed and signed only by the Germanys. The two contracts were signed at different times by the parties. Thus, both the Seaberrys and Germanys signed identical contracts.

[8]It is important to note that both the Seaberrys and the Germanys specifically placed their initials beside paragraph 26 in addition to placing their initials at the bottom of each page of the contracts. Therefore, the Seaberrys and the Germanys clearly acknowledged the existence of the arbitration provision.

6

anyone. Thus, the chancellor found paragraph 26 to be ineffective to the extent that the Seaberrys could not be forced to arbitrate. Upon entry of the opinion and order denying arbitration, Fradella appealed and the case was assigned to the Court of Appeals.

## PROCEEDINGS IN THE COURT OF APPEALS

¶9.    Though the parties stated the relevant issues in different ways, the Court of Appeals appropriately restated the issues as being whether the chancery court erred (1) in denying the motion to compel arbitration by finding that paragraph 11 and paragraph 26 of the real estate contract created an ambiguity which rendered the mandatory arbitration clause in the contract ineffective; and, (2) in finding that neither Fradella nor Prudential Gardner were signatories to the real estate contract, thereby preventing them from obtaining the benefit of the arbitration clause in the contract. However, in a plurality decision, the Court of Appeals decided the case on an issue not raised by the parties on appeal.[9] Instead of addressing these assigned issues, the plurality opinion reasoned that Paragraph 26 was a separate contract that required additional consideration by Fradella in order to be effective. The plurality stated, inter alia:

> In the case *sub judice*, no consideration was given by Fradella and Prudential Gardner to the Seaberrys or Germanys for the arbitration agreements. This separate arbitration contract was contained within the Seaberry-Germany contract, to which neither Fradella nor Prudential Gardner were parties. The consideration given from the Seaberrys to the Germanys, and from the Germanys to the Seaberrys, does not transfer to the separate arbitration

---

[9]Chief Judge King wrote the plurality opinion, joined by two other judges, and one judge concurred in result only, while one judge concurred in part and in the result. Judge Griffis authored the dissent, which was joined by four other judges.

7

agreement. Both Fradella and Prudential Gardner stand to benefit from the arbitration agreement, while neither offer anything in exchange to the Seaberrys or Germanys that may be classified as consideration. In order for the arbitration agreement to be enforceable, Fradella and Prudential Gardner must have some forbearance, detriment, loss or responsibility given or undertaken. Since there was none, this arbitration contract is void on its face.

*Fradella v. Seaberry*, 2006 Miss. App. LEXIS 272, **9-10, ¶12.

¶10.    Judge Griffis wrote an insightful dissent.  First, Judge Griffis disagreed that Fradella and Prudential Gardner were not parties to the final real estate contract of April 19, 2004, because the contract clearly stated that Fradella was acting as the agent of the Seaberrys and the Germanys and the contract also clearly detailed Fradella's rights and responsibilities regarding the transaction.  Second, Judge Griffis disagreed that additional consideration was necessary in order for the arbitration clause to be valid.  In other words, Judge Griffis disagreed with the plurality's "contract within a contract" theory and opined that the plurality had decided the case on an issue not properly before them.  Third, Judge Griffis believed paragraphs 11 and 26 created no ambiguity regarding the arbitration provision. Fourth, Judge Griffis disagreed with the chancellor's reliance on *Parkerson* because Fradella was specifically named in paragraph 26 as the beneficiary of the arbitration clause.  Fifth, Judge Griffis opined that "incorporation by reference, agency, and estoppel" were bases for binding nonsignatories that applied to Fradella's and Prudential Gardner's motion to compel arbitration.  *Fradella v. Seaberry*, 2006 Miss. App. LEXIS 272, **12-28, ¶¶19-39 (Griffis, J., dissenting).

8

¶11. Once the Court of Appeals' decision was handed down, Fradella and Prudential Gardner filed a motion for rehearing, which was denied by that Court. Fradella and Prudential Gardner then filed their petition for writ of certiorari, which we granted.

¶12. Finding Judge Griffis to be eminently correct in his dissent, we adopt, in part, Judge Griffis's reasoning, and thus reverse the judgment of the Court of Appeals.

## DISCUSSION

¶13. "This Court reviews questions of law de novo." *Pre-Paid Legal Servs. v. Battle*, 873 So. 2d 79, 82 (Miss. 2004) (citing *Russell v. Performance Toyota, Inc.*, 826 So. 2d 719, 721 (¶5) (Miss. 2002)). "[W]e have reviewed the grant or denial of a motion to compel arbitration under the de novo standard of review." *Id.* (citing *Tupelo Auto Sales, Ltd. v. Scott*, 844 So. 2d 1167, 1169 (¶5) (Miss. 2003); *See also East Ford, Inc. v. Taylor*, 826 So. 2d 709, 713 (Miss. 2002) and *Webb v. Investacorp, Inc.*, 89 F.3d 252, 256 (5th Cir. 1996)).

¶14. Inasmuch as the Court of Appeals incorrectly decided the case sub judice on an issue not properly before it, we will proceed to decide the two issues that are before us, which we restate for clarity: (1) whether paragraphs 11 and 26 created an ambiguity, thereby rendering the arbitration clause ineffective; and (2) whether a nonsignatory to a contract may enforce an arbitration clause.

9

**I. WHETHER THE TRIAL COURT ERRED IN DENYING THE MOTION TO COMPEL ARBITRATION, WHEN IT FOUND THAT PARAGRAPH 11 AND PARAGRAPH 26 OF THE REAL ESTATE CONTRACT CREATED AN AMBIGUITY, THEREBY RENDERING THE MANDATORY ARBITRATION CLAUSE OF THE CONTRACT INEFFECTIVE.**

¶15. The chancellor found that paragraphs 11 and 26 of the real estate contract created an ambiguity concerning whether the Seaberrys agreed to arbitrate. Paragraph 11 of the real estate contract states:

BREACH OF CONTRACT: Specific performance is the essence of this contract, except as otherwise specifically provided for in Paragraphs 2, 5, 11, and 14 and as further delineated below, and time is of the essence of this contract. In the event of breach of this contract by Purchaser, Seller may at his option (a) accept the earnest money deposit as liquidated damages and this contract shall then be null and void; or (b) enter suit in any court of competent jurisdiction for damages for the said earnest money deposit; or (c) enter suit in any court of competent jurisdiction for specific performance. If Seller accepts the earnest money deposit as liquidated damages, or if Seller litigates for additional damages in any court of law, Broker(s) shall be paid one half (½) of the earnest money deposit amount, or damages awarded, not to exceed the full commission herein provided. If the Seller succeeds in a suit for specific performance, Broker shall be paid a full commission by Seller.

In the event of breach of contract by Seller, Purchaser at his option may either (a) accept the return of the earnest money deposit and cancel the contract; or (b) enter suit for damages in any court of competent jurisdiction; or (c) enter suit for specific performance in any court of competent jurisdiction. In the event of breach of contract by Seller, Broker shall be paid a full commission by Seller regardless of any action taken by Purchaser, unless and except if this agreement calls for the Purchaser to pay commission. If it becomes necessary to insure the performance of the conditions of this contract for either party to initiate litigation, then losing party agrees to pay reasonable attorney's fees and court costs in connection herewith.

Paragraph 26 states:

MANDATORY ARBITRATION: Both buyer and seller (hereinafter "parties") acknowledge, understand, and agree that: (1) any controversy, claim, action or inaction arising out of, or relating to, the "purchase" set out herein, as against the listing company or selling company and/or their agents or representatives (hereinafter "company") involved in this transaction, shall be resolved by arbitration administered by the American Arbitration Association in accordance with its arbitration rules; and (2) judgment of the award rendered by the arbitrator(s) may be entered in any court of competent jurisdiction; and (3) the arbitration proceeding shall be conducted within the county in which the dispute arose or such other location as agreed upon by the parties; and (4) if fault is found, the award of damages will conform to the terms and conditions of the "purchase"; and (5) this transaction involves interstate commerce such that the Federal Arbitration Act, 9 U.S.C. Section 1 et seq. (1947 as amended) shall govern the interpretation and enforcement of this arbitration agreement along with all claims between or among any parties and the company(ies) involved in this transaction.

¶16. "Where a contract is clear and unambiguous, its meaning and effect are matters of law which must be determined by the court." *IP Timberlands Operating Co. v. Denmiss Corp.*, 726 So. 2d 96, 106 (Miss. 1998) (citing *Pfisterer v. Noble*, 320 So. 2d 383, 384 (Miss. 1975)). "This Court must construe the agreement as made by the parties and give the words of the document their commonly accepted meaning. If no ambiguity exists, this Court will accept the plain meaning of the instrument as the intent of the parties." *Id.* at 108.

¶17. Judge Griffis aptly stated in his dissent that paragraphs 11 and 26 created no ambiguity, and we agree. Judge Griffis stated, inter alia:

I do not find the ambiguity to which the chancellor refers in his ruling. Paragraphs 11 and 26 are not in conflict. Paragraph 11 indicates that "specific performance is the essence of the contract." It then proceeds to discuss the appropriate remedies for a breach of the contract by the buyer or the seller. In other words, if the buyer is in breach, the seller may accept liquidated damages, sue for damages or sue for specific performance. If the seller is in breach, the buyer may accept the return of his earnest money deposit, sue for damages or sue for specific performance.

11

> Paragraph 26 has nothing to do with a breach of the contract by the buyer or the seller. Instead, it provides that the buyer and seller agree to arbitrate any claim that they may have against the realtor, either the agent (Fradella) or the listing company (Prudential Gardner). I find no ambiguity between these paragraphs. Immediately following paragraph 26, RS (Rosella Seaberry) signed her initials. The very next line contains the initials of RS (Rosella Seaberry) and JS (James Seaberry). I believe it to be manifest error to find that there was an ambiguity in the contract or to say that the Seaberrys did not agree to be bound by paragraph 26, "Mandatory Arbitration," for any claims they brought against Fradella or Prudential Gardner.

*Fradella v. Seaberry*, 2006 Miss. App. LEXIS 272, **18-19, ¶¶28-29 (Griffis, J., dissenting).

¶18.   In accordance with *IP Timberlands*, we will accept the plain meaning of the instrument as the intent of the parties because we find that paragraphs 11 and 26 create no ambiguity.  Paragraph 11 confers upon the seller/buyer certain rights and remedies upon a breach of the contract by the buyer/seller.  Other than the provision that the broker is entitled to a portion of the earnest money deposit, the full commission, or court-ordered damages in the event the seller/buyer commences litigation against the buyer/seller, paragraph 11 pertains solely to the relationship between the seller and the buyer.

¶19.   On the other hand, paragraph 26 provides that "both buyer and seller" agree to arbitration based on "any controversy, claim, action or inaction arising out of, or relating to, the 'purchase' set out herein, *as against the listing company or selling company and/or their agents or representatives (hereinafter 'company') involved in this transaction*." (Emphasis added).  In other words, as opposed to the provisions of paragraph 11, which discusses the relationship between buyer and seller, the provisions of paragraph 26 discusses the relationship between both the buyer/seller with their realtor/broker.

12

¶20.   In sum, the Seaberrys and the Germanys no doubt contracted with each other to be able to go to court to resolve any disputes between them; however, on the other hand, the Seaberrys and the Germanys contracted with Fradella to resolve any disputes with their agent/broker by way of arbitration.[10]

¶21.   The Seaberrys likewise asserted procedural and substantive unconscionability in their efforts to defeat the arbitration clause. *East Ford, Inc. v. Taylor*, 826 So. 2d 709, 714 (Miss. 2002).  We quickly dispatch with the unconscionability argument, finding, inter alia, that this case is clearly distinguishable from *Pitts v. Watkins*, 905 So. 2d 553 (Miss. 2005), in which this Court found substantive unconscionability to be present in a termite contract dispute because (1) one party retained the right to pursue remedies in court, while the other party was limited to arbitration; (2) a limitation of liability provision had the practical effect of being extremely one-sided; and, (3) a limitations period shortened the statutory period for commencement of any action for remedies. *Id.* at 556-58.  In today's case, Paragraph 11 of the real estate contract did not create any right to Fradella to commence a court action against the Seaberrys or the Germanys.  Instead, paragraph 11 only "protected" Fradella's commission if the Seaberrys or the Germanys, sued each other in court.  Paragraph 26 of the real estate contract expressly set out that any dispute which the Seaberrys and/or the Germanys had with Fradella would be resolved by arbitration. Contrary to the assertions by the Seaberrys, we find nothing in the record which would lend support to a finding of

---

[10]The non-signatory status of Fradella and Prudential Gardner will be discussed in Issue II, infra.

13

procedural and/or substantiative unconscionability as it relates to paragraph 26 of the real estate contract. Neither the Court of Appeals' plurality opinion or dissenting opinion discussed the unconscionability issue, nor will this Court. We thus see no reason to enter into a discussion concerning the intricacies of procedural and substantive unconscionability and the like as discussed in such cases as *Russel v. Performance Toyota, Inc.*, 826 So. 2d 719, 725-26 (Miss. 2002), *East Ford*, 826 So. 2d at 714, and their progeny.

¶22. For the reasons stated, we find this issue to have merit; therefore, we are constrained to find that the chancellor erred in denying the motion to compel arbitration on the basis of an ambiguity between paragraphs 11 and 26, thus rendering the arbitration clause to be ineffective. No ambiguity existed as to the provisions of paragraph 11 and paragraph 26; therefore, the Seaberrys cannot prevail on this issue.

> **II. WHETHER THE TRIAL COURT ERRED WHEN IT FOUND THAT NEITHER FRADELLA NOR PRUDENTIAL GARDNER ARE SIGNATORIES TO THE REAL ESTATE CONTRACT, THEREBY PREVENTING THEM FROM OBTAINING THE BENEFIT OF THE MANDATORY ARBITRATION CLAUSE OF THE REAL ESTATE CONTRACT.**

¶23. The chancellor relied heavily on our decision in *Parkerson*, and he found that this Court had unequivocally stated that a nonsignatory to a contract could not rely on an arbitration clause within that contract. Judge Griffis, in his dissent, set out his reasoning for finding *Parkerson* inapplicable to the case sub judice.

> The chancellor began his conclusions of law stating that neither Fradella nor Prudential Gardner executed the document. The chancellor cited *Parkerson* for the proposition that "with clarity and without equivocation our Supreme Court stated that one who is not a signatory to the document containing an arbitration

14

clause *cannot* take advantage of the arbitration clause to compel arbitration." Any review of *Parkerson* begins with the understanding that it was a plurality decision by the Supreme Court, with four separate opinions.

In *Parkerson*, Ms. Parkerson bought a mobile home. She signed a document entitled "Retail Installment Contract, Security Agreement, Waiver of Trial by Jury and Agreement to Arbitration or Reference or Trial by Judge Alone." Ms. Smith signed it for the seller, Town & Country Mobile Homes, Inc. The arbitration clause read in part:

> Dispute Resolution. Any controversy or claim between or among you [Ms. Parkerson] and me [Ms. Smith and Town & Country] or our assignees arising out of or relating to this Contract or any agreements or instruments relating to or delivered in connection with this Contract, including any claim based on or arising from an alleged tort, shall, if requested by either you or me, be determined by arbitration, reference, or trial by a judge as provided below. A controversy involving only a single claimant, or claimants who are related or asserting claims arising from a single transaction, shall be determined by arbitration as described below. Any other controversy shall be determined by judicial reference of the controversy to a referee appointed by the court or, if the court where the controversy is venued lacks the power to appoint a referee, by trial by a judge without a jury, as described below. YOU AND I AGREE AND UNDERSTAND THAT WE ARE GIVING UP THE RIGHT TO A TRIAL BY JURY, AND THERE SHALL BE NO JURY WHETHER THE CONTROVERSY OR CLAIM IS DECIDED BY ARBITRATION, BY JUDICIAL REFERENCE, OR BY TRIAL BY A JUDGE.

*Parkerson*, 817 So. 2d at 531 (¶3).

Ms. Parkerson brought a claim against the manufacturer of the mobile home, Champion Home Builders Co., Inc. *Id.* at (¶1). Champion sought the benefit of the arbitration clause. Justice McRae wrote:

> Champion was not a party to the contract containing the arbitration provision, and therefore may not invoke the arbitration clause to which it was never a party. To hold otherwise would allow a manufacturer which is not a signatory

15

> to an agreement to assert rights found in that agreement. The *Wilson* [127 F.3d 40 (11th Cir. 1997)] court declined to make such a broad interpretation, as do we.

*Parkerson*, 817 So. 2d at 535 (¶ 19). Indeed, Champion was not mentioned in the arbitration clause.

> Such is not the case here. Paragraph 26, "Mandatory Arbitration," specifically provides for arbitration as the means of resolution of any claims that either the buyers or the sellers have against Fradella or Prudential Gardner. These factors (sic) clearly distinguishable from *Parkerson*. In my opinion, *Parkerson* provides no guidance to the outcome of this case and it was manifest error for the chancellor to rely on *Parkerson* for its ruling.

*Fradella v. Seaberry*, 2006 Miss. App. LEXIS 272, **19-22, ¶¶30-33 (Griffis, J., dissenting).

¶24. As noted by Judge Griffis in his dissent in today's case, *Parkerson* generated four separate opinions.[11] We likewise agree with Judge Griffis that *Parkerson* has no applicability to today's case. In *Parkerson*, not only was Champion (the one seeking the benefit of the arbitration clause) a non-signatory to the contract containing the arbitration clause, Champion was not even mentioned in the arbitration clause. However, in today's case, Fradella/Prudential Gardner was clearly mentioned in the arbitration clause. The arbitration clause, in express terms, informed both the buyers and the sellers that by initialing and signing the contract, they were agreeing to resolve by arbitration "any controversy,

---

[11]Presiding Justice McRae wrote the majority opinion, joined by Justices Diaz, Easley and Graves, and Justice Carlson concurred in result only. Justice Diaz wrote a concurring opinion, joined by Presiding Justice McRae, and Justices Easley and Graves. Justice Cobb wrote a dissenting opinion. Chief Justice Pittman likewise wrote a separate opinion wherein he concurred in part, and dissented in part, and this opinion was joined by Justice Waller, and was joined in part by Justices Cobb and Carlson. Presiding Justice Smith did not participate.

claim, action or inaction arising out of, or relating to, the 'purchase' set out herein, *as against the listing company or selling company and/or their agents or representatives (hereinafter 'company') involved in this transaction*."  (Emphasis added).

¶25.    The initial Agreement to Purchase or Sell dated February 29, 2004, signed by the Seaberrys and Fradella on behalf of Prudential Gardner, created, inter alia, certain rights and responsibilities for Prudential Gardner.  Certainly, at the time of the execution of this contract, reasonable persons would expect that if subsequent discussions and negotiations between the buyers and the sellers culminated in a joint agreement for the Seaberrys' purchase of the Germanys' home on certain specified terms and conditions, a written contract would be generated to memorialize the agreement.  In today's case, the end result of negotiations between the buyers and the sellers, with the involvement of the realtor/broker, was the execution by the Seaberrys and the Germanys of a Contract for the Sale and Purchase of Real Estate, dated April 19, 2004.  It is this contract which contained the arbitration clause which is at the heart of today's case.  Although not signed by Fradella, or anyone on behalf of Prudential Gardner, this contract clearly created certain rights and responsibilities on the part of Prudential Gardner.

¶26.    Fradella was indisputably acting as the Seaberrys' real estate agent.  Furthermore, the Seaberrys' breach of contract claim is unquestionably intertwined with the duties Fradella was to perform according to the terms and provisions of the real estate contract.  But for the real estate contract containing the arbitration clause at issue, the Seaberrys could not bring a claim of breach of contract.  Because the Seaberrys rely on the document for their breach

17

of contract claim, they cannot deny Fradella the benefit of the arbitration clause within the real estate contract that she relied upon to delineate her duties and responsibilities with regard to the transaction. When the pertinent documents concerning this real estate transaction are read in their totality, the fact that Fradella, or anyone on behalf of Prudential Gardner, did not sign this contract is of no moment. *Sullivan v. Protex Weatherproofing, Inc.*, 913 So. 2d 256, 261 (Miss. 2005). *See also Smith Barney, Inc. v. Henry*, 775 So. 2d 722, 727 (Miss. 2001). Unquestionably, *Parkerson* is distinguishable and thus totally inapplicable to today's case. For the reasons stated, we find that this issue therefore has merit in that the chancellor erred in finding that Fradella/Prudential Gardner, as non-signatories to the real estate contract which contained the arbitration clause, could not seek the benefit of the arbitration clause.

## CONCLUSION

¶27. We are constrained to find that the Court of Appeals erred in finding that the arbitration clause in the real estate contract was void for lack of consideration. We find that no ambiguity was created by paragraph 11 and paragraph 26 of the real estate contract of April 19, 2004. Furthermore, for the reasons discussed, we find that Fradella was entitled to rely on the arbitration provision because the Seaberrys expressly agreed to arbitrate as to Fradella.

¶28. For the foregoing reasons, we reverse the judgment of the Court of Appeals, which affirmed the chancellor's denial of Fradella's motion to compel arbitration, and we remand this case to the Chancery Court of Pearl River County with directions to compel the parties,

18

James E. Seaberry, Rosella M. Seaberry, Michelle Fradella, and GBS Properties, LLC, d/b/a Prudential Gardner Realtors, to submit to arbitration consistent with this opinion.

¶29. **THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED. THE JUDGMENT OF THE CHANCERY COURT OF PEARL RIVER COUNTY IS REVERSED, AND THIS CASE IS REMANDED TO THAT COURT WITH DIRECTIONS TO COMPEL THE PARTIES TO SUBMIT TO ARBITRATION CONSISTENT WITH THIS OPINION**.

**SMITH, C.J., WALLER, P.J., EASLEY, DICKINSON AND RANDOLPH, JJ., CONCUR. DIAZ, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY GRAVES, J. COBB, P.J., NOT PARTICIPATING.**

**DIAZ, JUSTICE, DISSENTING:**

¶30. This case is not a difficult one. We are asked one question: may a non-party, non-signatory to a contract, who has provided no consideration to the contract, take advantage of a clause in that contract? Centuries of law say "no," and indeed the majority cites no cases for their proposition that a non-signatory to a contract who has provided no consideration to the contract may find refuge within the contract to which it is a stranger. Because the majority's reasoning is not based upon basic legal principles or *stare decisis* I must respectfully dissent.

¶31. Arbitration can only exist when created by a contract. For "[a]rbitration is strictly a matter of contract; if the parties have not agreed to arbitrate, the courts have no authority to mandate that they do so." ***Thomson-CSF, S.A. v. American Arbitration Ass'n***, 64 F.3d 773, 779 (2d. Cir. 1995). Even when there is a contract for arbitration, state and common law

19

defenses to contract law remain valid under both federal law and U.S. Supreme Court precedent.[12]

¶32.    A signature is not necessarily required to become a party to a contract, but one must at least be a "party" under some contractual or legal understanding of the term.  While the majority struggles, without benefit of citation, to stitch out of whole cloth a reason why a non-party, non-signatory who did not provide consideration can invoke the contract, there are times when a nonsignatory may find refuge in a contract.  In general, "nonsignatories may be bound to an arbitration agreement under ordinary contract and agency principles." *Javitch v. First Union Securities, Inc.*, 315 F.3d 619, 629 (6th Cir. 2003).  "Traditionally, five theories for binding a nonsignatory to an arbitration agreement have been recognized: (1) incorporation by references; (2) assumption; (3) agency; (4) veil-piercing/alter-ego; and (5) estoppel," and "[s]ometimes a sixth theory, third-party beneficiary, is added, but it is closely analogous to the estoppel theory." *Ellsworth v. American Arbitration Ass'n*, 148 P.3d 983, 989 n.11 (Utah 2006) (examining *Int'l Paper Co. v. Schwabedissen Maschinen*

---

[12]This is because there is always a basic two-step inquiry we undertake when scrutinizing an agreement under the FAA.  *See East Ford*, 826 So. 2d at 713.  First we must determine if the parties intended to arbitrate the dispute; if so, we next consider "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 628 (U.S. 1985); *East Ford* at 826 So. 2d at 713.  "Under the second prong, applicable contract defenses available under state contract law such as fraud, duress, and unconscionability may be asserted to invalidate the arbitration agreement without offending the Federal Arbitration Act." *Id.* at 713; *see* 9 USC § 2 (an "agreement in writing to submit to arbitration an existing controversy . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract").

20

*& Anlagen GMBH*, 206 F.3d 411, 417 (4th Cir. 2000) and *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 356, 362 (5th Cir. 2003)).

¶33. No contract defense or equitable result demands that a non-party, non-signatory who has not provided any consideration under the contract can bind the actual parties to a contract. "Because arbitration is a matter of contract, exceptional circumstances must apply before a court will allow a non-contracting party to impose a contractual agreement to arbitrate." *Denney v. Jenkens & Gilchrist*, 412 F. Supp.2d 293, 297 (S.D.N.Y. 2005) (internal quotations omitted). The burden of demonstrating this defense is on Fradella, and no such defense has been shown.

¶34. This was a contract for the sale of land by one party to another. By the reasoning of the majority—that the broker was mentioned in passing—an incalculable and limitless host of persons could take advantage of any contract, if their name is but mentioned. This ignores common sense and the strict language of the contract, which clearly states that arbitration is between "[b]oth buyer and seller," not "both buyer, seller, and any other party that may be affected by fraud."

¶35. This does not make legal sense, and it does not make sense from a policy standpoint. I must continue to ask, why are we so hostile to the constitutional rights of Mississippians? As I have noted before, arbitration as a concept is wholly valid—if parties wish to settle disputes outside of the legal system, they should be able to contract for such a result. It is so much more than a choice of forum, because it affects multiple constitutional rights. It is my deepest belief that all Mississippians have a fundamental constitutional right to both a

21

jury of their peers and access to the court system.  *See Cleveland v. Mann*, 942 So. 2d 108,

121-22  (Miss. 2006) (Diaz, J., dissenting).

¶36.    Because today the majority continues consciously and aggressively down a path which

strips our citizenry of fundamental constitutional rights, I must respectfully dissent.  I would

have affirmed the decision of the Pearl River County Chancery Court and the Court of

Appeals denying arbitration for Fradella.

    **GRAVES, J., JOINS THIS OPINION.**