# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2019-CA-00617-SCT

*DAVID CHADWICK CARRICK AND STIFEL,*
*NICOLAUS & COMPANY, INCORPORATED*

*v.*

*BETTYE M. TURNER, BY AND THROUGH*
*SALLY JO TURNER WALLEY, SHERRA TURNER*
*AND NANCY TURNER GORDON, POA*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/11/2019 |
| TRIAL JUDGE: | HON. ROBERT P. KREBS |
| TRIAL COURT ATTORNEYS: | WILLIAM HARVEY BARTON |
| | CLAIRE W. KETNER |
| | JOHN ERNEST WADE, JR. |
| COURT FROM WHICH APPEALED: | GREENE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | JOHN ERNEST WADE, JR. |
| | CLAIRE W. KETNER |
| ATTORNEY FOR APPELLEES: | WILLIAM HARVEY BARTON |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | REVERSED AND REMANDED - 07/30/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE KING, P.J., COLEMAN AND CHAMBERLIN, JJ.**

**KING, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Bettye Turner invested approximately $2 million into a securities brokerage account

that was created and managed by David Carrick, an investment broker then employed with

Morgan Stanley Smith Barney (Morgan Stanley). Carrick later became employed with Stern,

Agee & Leach, Inc. (Stern Agee). Turner and Carrick signed an Account Application in order

to transfer Turner's funds to a Stern Agee account. The Account Application incorporated by reference a Client Account Agreement that contained an arbitration provision. Eventually, Stifel, Nicolaus & Company, Inc. (Stifel), acquired and merged with Stern Agee. Turner filed a lawsuit against Carrick and Stifel alleging negligent management and supervision of her investment account. Carrick and Stifel moved to compel arbitration. The trial court denied their motion to compel arbitration, and Carrick and Stifel appealed. Because the trial court erred by failing to compel arbitration, this Court reverses the trial court's judgment and remands the case to the trial court for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

¶2.    In 2007, Turner hired Carrick, an investment broker, to invest and manage approximately $2 million.  At that time, Carrick was employed with Morgan Stanley. Carrick's employment with Morgan Stanley ended in 2009.[1]

¶3.    Carrick secured new employment with the brokerage firm Stern Agee. On September 15, 2009, Carrick met with Turner in order to transfer her funds into a Stern Agee account that Carrick would continue to manage. To execute the transfer, Stern Agee required Turner to open a new account with it. Accordingly, Turner completed and signed a Stern Agee Account Application[2] that incorporated by reference a Client Account Agreement. Paragraph F of the Account Application stated, "I have received a copy of the CLIENT ACCOUNT

---

[1] Turner alleged in the complaint that Carrick was terminated for professional misconduct.

[2] Carrick cosigned the Account Application on the signature line designated for the registered representative.

2

AGREEMENT and agree to the terms and conditions thereof. By signing below, the customer acknowledges receiving a copy of this agreement." The Account Agreement did not contain signature lines.

¶4.     The Account Application and the Account Agreement each included predispute arbitration provisions. Paragraph H of the Account Application provided,

> **H.     I/WE UNDERSTAND THAT THE CLIENT ACCOUNT AGREEMENT PROVIDED TO ME/US CONTAINS IN NUMBERED PARAGRAPH 22, A PRE-DISPUTE ARBITRATION CLAUSE REQUIRING ALL DISPUTES UNDER THIS AGREEMENT TO BE SETTLED BY BINDING ARBITRATION. BY SIGNING BELOW, I/WE ACKNOWLEDGE THAT I/WE HAVE RECEIVED A COPY OF THIS AGREEMENT.**

¶5.     During litigation, Stifel produced two separate Account Agreements and an affidavit attesting that the two Account Agreements were the only two Account Agreements in use during the time Turner was a client.  The first Account Agreement Stifel produced was dated 2012, despite Turner having signed her Account Application in 2009.[3]  Stifel later produced an earlier Account Agreement, without information regarding the time period when Stern Agee/Stifel used that Account Agreement. Neither party has identified which version of the Account Agreement Turner received,[4] although both appear to concede that she received one

_____

[3]Stifel did not produce the exact Account Agreement received by Turner because that Account Agreement would have been in Turner's possession.  Stifel produced a copy of the Account Agreement it believed Turner had received and it believed had been in use in 2009; that produced Account Agreeement, however, was dated 2012.

[4] Carrick and Stifel admit in footnote 3 of their brief that "[b]ecause the separate Client Account Agreement does not bear Ms. Turner's signature and the original was left in her possession, Defendants were unable to provide an absolute guarantee that the exemplar provided with their Motion to Compel was the version Ms. Turner received in September of

3

of them, or, at least, that she acknowledged receiving one of them. Paragraph 19[5] of the 2012

Account Agreement provided,

> **19. ARBITRATION. THIS AGREEMENT CONTAINS A PREDISPUTE ARBITRATION CLAUSE. BY SIGNING AN ARBITRATION AGREEMENT THE PARTIES AGREE AS FOLLOWS:**
>
> **(A) ALL PARTIES TO THIS AGREEMENT ARE GIVING UP THE RIGHT TO SUE EACH OTHER IN COURT, INCLUDING THE RIGHT TO A TRIAL BY JURY, EXCEPT AS PROVIDED BY THE RULES OF THE ARBITRATION FORUM IN WHICH A CLAIM IS FILED.**

Stifel attested that the discrepancy between the Account Application paragraph number and

the 2012 Account Agreement paragraph number was a typographical error: the Account

Application had not been updated to reflect the change in the paragraph number in which the

arbitration provision was located.

¶6.    Paragraph 22 of the older Account Agreement states,

> **22. ARBITRATION. THIS AGREEMENT CONTAINS A PREDISPUTE ARBITRATION CLAUSE.  BY SIGNING AN ARBITRATION AGREEMENT THE PARTIES AGREE AS FOLLOWS:**
>
> **(A) ALL PARTIES TO THIS AGREEMENT ARE GIVING UP THE RIGHT TO SUE EACH OTHER IN COURT, INCLUDING THE RIGHT TO A TRIAL BY JURY, EXCEPT AS PROVIDED BY THE ARBITRATION FORUM IN WHICH A CLAIM IS FILED.**

Both paragraph 19 of the 2012 Account Agreement and paragraph 22 of the older Account

---

2009."

[5] Paragraph 22 of the 2012 Account Agreement (the paragraph to which the Account Application refers) contains a choice of law provision.  That choice of law provision does reference the arbitration provision contained in paragraph 19, stating, "[t]his agreement, including the arbitration provisions contained herein, shall be governed by the laws of the State of Alabama . . . ."  The older Account Agreement likewise provides that the laws of Alabama govern.

Agreement are fairly lengthy, and differ in some of the details.

¶7.     The 2012 Account Agreement also included an "assignment of rights" provision that stated,

> **26. ASSIGNMENT OF RIGHTS. I understand and agree that you may assign your rights and duties under this Agreement to any subsidiary, affiliate, or successor by merger or consolidation without notice to me, or to any other entity after thirty day written notice to me. This Agreement shall be binding on and benefit my and your heirs, executors, administrator, successors, and assigns.**

The older Account Agreement provided that the agreement shall "inure to the benefit of [Stern Agee's] assigns and successors, by merger, consolidation or otherwise."

¶8.     In 2015, Stern Agee assigned its rights and duties under its agreement with Turner to Stifel.[6] Stifel acquired and merged with Stern Agee. Once the acquisition and merger were finalized, Carrick was then employed with Stifel.

¶9.     On January 8, 2018, Turner, by and through her three daughters, pursuant to their durable power of attorney,[7] filed a lawsuit against Carrick and Stifel alleging negligent management and supervision of Turner's investment account.

¶10.    The defendants filed a Motion to Compel Arbitration and Stay Litigation. They argued that, pursuant to the Federal Arbitration Act (FAA), Turner's Account Application and Account Agreement mandated that the parties resolve the dispute in binding arbitration. In

---

[6] Stifel, Nicolaus & Company, Inc., Carrick's codefendant, is the principal subsidiary of Stifel Financial Corporation, and it serves as the arm through which that corporation conducts its wealth management business in the United States.

[7] When Turner filed this lawsuit, she was elderly and suffering from dementia. She later died on August 9, 2018.

response, Turner contended that she was not bound to arbitration because (1) Turner contracted with Stern Agee and not Stifel, thus precluding Stifel from enforcing the contract; (2) Turner did not receive notice of Stern Agee's assignment of its rights to Stifel as a consequence of the two entities' merger; and (3) the contract was invalid because the Account Application cited paragraph 19 of the Account Agreement and the arbitration clause was found in paragraph 22 of the 2012 Account Agreement.

¶11.    The trial court held two hearings on the motion to compel arbitration. At the first hearing, the trial court ordered the parties to conduct limited discovery in order (1) to produce the Account Agreement Turner originally received with her Account Application, (2) to clarify the merger of and business relationship between Stern Agee and Stifel, and (3) to produce information expounding on Stifel's relationship to Stifel Financial Corporation.

¶12.    The parties conducted the specific, limited discovery. The defendants filed a supplemental affidavit in support of their initial motion that explained, "Stifel Nicolaus and its parent company, Stifel Financial, are both successors by merger to Stern Agee Group and its subsidiary Stern Agee & Leach." As an exhibit to their supplemental affidavit, the defendants provided a prior, virtually identical version of the Account Agreement, which was, according to the defendants, "the only other version in existence at the time." In response to the defendants' supplemental affidavit, Turner filed a supplemental brief in which she, for the first time, asserted that the arbitration clause was not enforceable because she did not sign the Account Agreement.

¶13.    After the second hearing, the trial court found that "there was no genuine contract

6

between the parties" and that "the arbitration clause fails." The trial court consequently denied the defendants' motion and ordered that the case be set for trial.

¶14. The defendants appeal and argue the trial court erred by refusing to compel arbitration because (1) it subjected arbitration to a higher level of scrutiny than is required by the FAA, (2) the Account Application and the Account Agreement are not "conflicting and confusing" and thus do not negate the arbitration provision, and (3) a valid agreement to arbitrate exists between the parties.

## STANDARD OF REVIEW

¶15. "This Court reviews questions of law de novo." *Fradella v. Seaberry*, 952 So. 2d 165, 170 (Miss. 2007) (internal quotation marks omitted) (quoting *Pre-Paid Legal Servs., Inc. v. Battle*, 873 So. 2d 79, 82 (Miss. 2004)). Accordingly, this Court "review[s] the grant or denial of a motion to compel arbitration under the de novo standard of review." *Id.* (internal quotation mark omitted) (quoting *Battle*, 873 So. 2d at 82).

## DISCUSSION

*I.     FAA*

¶16. Under the FAA, Congress established "a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Covenant Health & Rehab. of Picayune, LP v. Estate of Moulds ex rel. Braddock*, 14 So. 3d 695, 698 (Miss. 2009) (internal quotation mark omitted) (quoting *IP Timberlands Operating Co. v. Denmiss Corp.*, 726 So. 2d 96, 107 (Miss. 1998)). "The FAA requires courts to place arbitration agreements 'on equal

7

footing with all other contracts[.]'" ***Kindred Nursing Ctrs. Ltd. P'ship v. Clark***, 137 S. Ct. 1421, 1424, 197 L. Ed. 2d 806 (2017) (quoting ***DIRECTV, Inc. v. Imburgia***, 136 S. Ct. 463, 465, 193 L. Ed. 2d 365 (2015)).  It precludes courts from applying state law "in a fashion that disfavors or interferes with arbitration."  ***Id.*** (quoting ***AT&T Mobility, LLC v. Concepcion***, 563 U.S. 333, 342, 131 S. Ct. 1740, 1747, 179 L. Ed. 2d 742 (2011)).

¶17.    The FAA provides that

> A written provision in . . . a contract evidencing a transaction involving [interstate] commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (2012).  Relying on Congress's authority under the Commerce Clause, the FAA "creates a body of federal and substantive law that is applicable in both state and federal courts." ***IP Timberlands Operating Co.***, 726 So. 2d at 107 (citing ***Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.***, 460 U.S. 1, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983)).

¶18.    This Court "will respect the right of an individual or an entity to agree in advance of a dispute to arbitration or other alternative dispute resolution." ***Id.*** at 104.  "Articles of agreement to arbitrate, and awards thereon are to be liberally construed so as to encourage the settlement of disputes and the prevention of litigation, and every reasonable presumption will be indulged in favor of the validity of arbitration proceedings." ***Id.*** at 106 (internal quotation marks omitted) (quoting ***Hutto v. Jordan***, 36 So. 2d 809, 812 (Miss. 1948)).

¶19.    "In determining the validity of a motion to compel arbitration under the [FAA], courts generally conduct a two-prong inquiry." ***E. Ford, Inc. v. Taylor***, 826 So. 2d 709, 713 (Miss.

2002). The first prong determines "whether the parties intended to arbitrate the dispute."

***Harrison Cty. Commercial Lot, LLC v. H. Gordon Myrick, Inc.***, 107 So. 3d 943, 949 (Miss.

2013) (internal quotation marks omitted) (quoting ***Scruggs v. Wyatt***, 60 So. 3d 758, 766

(Miss. 2011)). "The first prong has two considerations: (1) whether there is a valid arbitration

agreement and (2) whether the parties' dispute is within the scope of the arbitration

agreement." ***Taylor***, 826 So. 2d at 713. "Under the second prong, the United States Supreme

Court has stated the question is 'whether legal constraints external to the parties' agreement

foreclosed arbitration of those claims.'" ***Id.*** (quoting ***Mitsubishi Motors Corp. v. Soler***

***Chrysler–Plymouth, Inc.***, 473 U.S. 614, 626, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985)).

"Under the second prong, applicable contract defenses available under state contract law such

as fraud, duress, and unconscionability may be asserted to invalidate the arbitration agreement

without offending the Federal Arbitration Act." ***Id.*** (citing ***Doctor's Assocs., Inc. v.***

***Casarotto***, 517 U.S. 681, 686, 116 S. Ct. 1652, 134 L. Ed. 2d 902 (1996)).

II. *Whether a valid arbitration agreement exists between the parties.*[8]

¶20. The trial court found that no contract, thus no agreement to arbitrate, existed between

the parties, pronouncing that the Account Agreement was "on its face, . . . confusing and

conflicting." This Court employs ordinary principals of contract law to determine whether a

valid arbitration agreement exists. ***H. Gordon Myrick, Inc.***, 107 So. 3d at 950. If a contract

---

[8] Turner does not assert any state law contract defenses, thus whether a valid arbitration agreement exists is the sole issue before this Court. Further, given our ruling that the trial court should be reversed because a valid arbitration agreement exists, we decline to address Carrick and Stifel's argument that the trial court erred by applying a" heightened standard" by characterizing the arbitration agreement as a waiver of the right to a jury trial.

9

is unambiguous, a court must apply the plain meaning. *Id.* If a contract is ambiguous, those ambiguities are typically construed against the contract's drafter. *Id.* However, in the case of arbitration, ambiguities regarding arbitration should be construed in favor of arbitration. *Id.*

¶21. First, the trial court faulted the discrepancy between paragraph H of the Account Application and the 2012 Account Agreement. Paragraph H of the Account Application stated that the arbitration clause was contained in paragraph 22 of the Account Agreement. But paragraph 19, not paragraph 22, contained the arbitration provision in the 2012 Account Agreement. Yet, without regard to the paragraph reference, the Account *Application* provides in capital letters that the parties are agreeing to "a pre-dispute arbitration clause requiring all disputes under this agreement to be settled by binding arbitration." The Account Application alone is sufficient to indicate the unambiguous intent of the parties to arbitrate. "If no ambiguity exists, this Court will accept the plain meaning of the instrument as the intent of the parties." *Fradella*, 952 So. 2d at 171 (quoting *IP Timberlands Operating Co.*, 726 So. 2d at 106). It is clear that a valid arbitration agreement exists and that the trial court should have compelled arbitration.

¶22. What is not clear from the record is which Account Agreement, and therefore which arbitration provision, governs arbitration. The trial court did not appear to make a clear determination regarding which Account Agreement Turner received. It may also be that Stifel is unable to meet its burden of showing which specific arbitration provision applies. If neither applies, the FAA may provide for how to determine the method of arbitration. *See NC*

10

*Leasing, LLC v. Junker*, 172 So. 3d 155, 158-59 (Miss. 2015); 9 U.S.C.A. § 5 (West) (If no method of arbitration is provided by the arbitration provision, "then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein[.]"). Thus, this Court remands the case for a determination regarding which Account Agreement's arbitration provision, if either, applies.

¶23. Turner asserts that Stifel is not entitled to enforce the arbitration agreement between Turner and Stern Agee because Stifel was not a signatory to the contract at issue. Turner's own complaint alleged that Stifel is a successor in interest to Stern Agee. Therefore, the agreement encompasses Stifel as a party that may contractually compel Plaintiffs to arbitration. The Plaintiffs cannot now deny Stifel the benefit of the arbitration provision within the Account Agreement that it relied on to "delineate [its] duties and responsibilities with regard to the transaction." *Fradella*, 952 So. 2d at 175.

## CONCLUSION

¶24. The parties entered into a valid and enforceable arbitration agreement in the Account Application. Accordingly, this Court reverses the trial court's judgment denying Carrick and Stifel's motion to compel arbitration. We remand this case with directions to compel the parties to submit to arbitration and to determine which version of the Account Agreement, if either, applies to that arbitration; if neither applies, the trial court should look to the FAA for guidance regarding the specifics of arbitration.

11

¶25.  **REVERSED AND REMANDED.**

      **KITCHENS, P.J., COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR. RANDOLPH, C.J., AND GRIFFIS, J., NOT PARTICIPATING.**