# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-IA-00125-SCT

*ROGERS-DABBS CHEVROLET-HUMMER, INC.*

*v.*

*KEITH BLAKENEY, INDIVIDUALLY AND ON BEHALF OF SOUTHERN INDUSTRIAL CONTRACTORS, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/17/2004 |
| TRIAL JUDGE: | HON. ROBERT G. EVANS |
| COURT FROM WHICH APPEALED: | JASPER COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | CRAIG LAWSON SLAY |
| ATTORNEYS FOR APPELLEES: | MARK K. TULLOS |
| | CRAIG N. ORR |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED AND REMANDED - 02/22/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, P.J., CARLSON AND RANDOLPH, JJ.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.     Although the trial court granted the defendant's motion to compel arbitration as to one count in a multi-count complaint, the trial court denied the defendant's motion to compel arbitration as to the remaining counts. From this order denying the motion to compel as to all counts in the complaint, the defendant petitioned us for an interlocutory appeal, which we granted.  Finding no error, we affirm the order denying arbitration entered by the Circuit Court for the Second Judicial District of Jasper County.

**FACTS AND PROCEEDINGS IN THE TRIAL COURT**

¶2. On or about May 30, 2003, Keith Blakeney, on behalf of Southern Industrial Contractors, Inc. (SIC),[1] purchased a new 2003 Hummer H-2 (VIN 5GRGN23U33H120356) from Rogers-Dabbs Chevrolet-Hummer, Inc. (Rogers-Dabbs). As part of the transaction, Blakeney paid Rogers-Dabbs $64,324 in cash and signed several documents including the arbitration documents in dispute today. We will in due course set out in detail the provisions of the arbitration agreement at issue here.

¶3. Blakeney alleges that soon after purchasing the Hummer H-2 from Rogers-Dabbs, he started experiencing mechanical problems with the vehicle. More importantly, Blakeney asserts he never received the title to the vehicle. In fact, Blakeney contends that to date he still does not have the title to the Hummer H-2 that he purchased from Rogers-Dabbs. Furthermore, Blakeney alleges that in September 2003, he was informed that a stolen Hummer H-2 with a Mississippi replacement title containing the VIN to his Hummer H-2, along with his name and SIC's name, had been recovered in the State of Georgia. Blakeney contends that the documents received by the Georgia dealer bear Blakeney's forged signature.[2]

---

[1]For the sake of clarity, Keith Blakeney and Southern Industrial Contractors, Inc. will be referred to simply as "Blakeney."

[2]Blakeney describes it this way in his pleadings: "Plaintiff's identities, both corporate and individual, were wrongfully appropriated as a result of Plaintiff's dealings with the Defendant and its employees. Plaintiff's identities were then used to obtain a replacement title to the vehicle purchased from the Defendant, Rogers Dabbs. Said replacement title, along with a forged bill of sale, was then used in an attempt to sell a stolen Hummer H-2 in

¶4. Therefore, on March 23, 2004, Blakeney, individually and on behalf of SIC, filed suit against Rogers-Dabbs, General Motors Corporation and John Does 1-25 in the Circuit Court for the Second Judicial District of Jasper County, Mississippi. The complaint contained five counts alleging against the defendants: (1) breach of warranty; (2) invasion of privacy; (3) negligent hiring and supervision; (4) civil fraud; and (5) intentional and negligent infliction of emotional distress and mental anguish. Blakeney sought actual damages of $1,000,000 and punitive damages of $10,000,000. The complaint alleged, *inter alia*, that Rogers-Dabbs negligently allowed at least one of its employees to use Blakeney's name in furtherance of an ongoing criminal enterprise.

¶5. Specifically, Blakeney asserted that he had become aware that stolen vehicles had been sold to unsuspecting buyers with his name being used on the forged vehicle titles and bills of sale. The complaint further asserted that Blakeney had never received the title to the Hummer H-2, although Blakeney paid for the vehicle in cash. Blakeney contended that one or more employees of Rogers-Dabbs stole Blakeney's title to the Hummer H-2 and used the title, along with Blakeney's VIN, to obtain forged titles to stolen vehicles.

¶6. Blakeney likewise asserted a claim of civil fraud. Blakeney specifically alleged that Rogers-Dabbs, through its agents and/or employees, used Blakeney's private information and identity for its pecuniary gain, all to the detriment of Blakeney individually and in his

the State of Georgia. Such conduct by the Defendant and/or its employees was not only unlawful under the laws of the State of Mississippi, but also constitute a civil fraud perpetrated against the Plaintiff by the Defendant."

3

corporate capacity.[3] In particular, Blakeney contended that Rogers-Dabbs used Blakeney's identities, personal and corporate, in furtherance of an ongoing criminal enterprise.

¶7. Twenty-eight days later, on April 20, 2004, prior to any responsive pleading being filed by an adverse party, Blakeney filed a notice of voluntary dismissal without prejudice, as to General Motors. *See* Miss. R. Civ. P. 41(a)(1)(i). Notwithstanding the Rule 41 dismissal as to General Motors, both General Motors and Rogers-Dabbs, on April 28, 2004, filed a Joint Motion to Dismiss, Or In the Alternative, Transfer Case for Lack of Venue, Or In the Alternative, Motion to Compel Arbitration. On December 22, 2004, the trial court entered an order granting the motion to compel arbitration as to count one (breach of warranty), but denied arbitration as to the remaining counts. On January 14, 2005, the trial court entered its order denying Rogers-Dabbs's Motion for Certification of Interlocutory Appeal and for Stay of Proceedings. Miss. R. App. P. 5.[4]

¶8. By order entered on January 20, 2005, the trial court, over opposition from Rogers-Dabbs, granted Blakeney's motion to amend complaint, which motion had been filed prior to the trial court's entry of its order denying certification for an interlocutory appeal. The

---

[3]Blakeney is the President of SIC.

[4]Effective December 9, 2004, as to trial court orders entered from and after March 1, 2005, the provisions of Miss. R. App. P. 5(a) and 5(b) were amended to eliminate the requirement of seeking trial court certification of an interlocutory appeal to this Court. However, since the trial court entered its order ruling on the motion for certification of an interlocutory appeal prior to March 1, 2005, such entry of an order by the trial court was consistent with the rule as it then existed.

main difference between the complaint and the amended complaint was the elimination of General Motors as a defendant and any reference to the breach of warranty claim.

¶9. Likewise, on January 20, 2005, Rogers-Dabbs filed with this Court its Petition for Interlocutory Appeal pursuant to Miss. R. App. P. 5(a) and a Motion for Stay of Proceedings in Lower Court. By order entered on February 9, 2005, a three-justice panel of this Court granted Rogers-Dabbs's petition for interlocutory appeal and stayed the trial court proceedings pending the resolution of this appeal.

## DISCUSSION

¶10. Rogers-Dabbs asserts that Blakeney agreed to have all his claims resolved by arbitration; that arbitration agreements are presumptively valid; that the prerequisites under the Federal Arbitration Act (FAA) are satisfied; and that Blakeney is bound by the terms of the arbitration agreement. On the other hand, Blakeney asserts that, pursuant to the provisions of the Uniform Commercial Code (Miss. Code Ann. §§ 75-1-101 *et seq*. (Rev. 2002), he revoked acceptance of the Hummer due to nonconformity which substantially impaired the value of the vehicle; that he did not agree to have claims involving identity theft and forgery resolved by arbitration inasmuch as such claims were not contemplated by the arbitration agreement; that the FAA prerequisites are not satisfied; and that the arbitration agreement at issue is procedurally unconscionable. Although the parties obviously state the issues in different ways, we combine these issues and restate what we deem to be today's critical issue for clarity in discussion.

5

**WHETHER THE TRIAL COURT ERRED IN DENYING ROGERS-DABBS'S MOTION TO COMPEL ARBITRATION AND TO STAY PROCEEDINGS.**

¶11. "The grant or denial of a motion to compel arbitration is reviewed *de novo*." ***East Ford, Inc. v. Taylor***, 826 So. 2d 709, 713 (Miss. 2002) (citing ***Webb v. Investacorp, Inc.***, 89 F.3d 252, 256 (5th Cir. 1996)).

¶12. The Federal Arbitration Act dictates that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (1947). In fact, the Act established a strong federal policy favoring arbitration. Therefore, in order to determine the "validity of a motion to compel arbitration under the Federal Arbitration Act, courts generally conduct a two-pronged inquiry." ***East Ford***, 826 So. 2d at 713. Under the first prong, the court should determine whether the parties have agreed to arbitrate the dispute. ***Id.*** In order to determine if the parties have agreed to arbitrate the dispute, two considerations are taken into account: "(1) whether there is a valid arbitration agreement and (2) whether the parties' dispute is within the scope of the arbitration agreement." ***Id.*** If the court determines that the parties did in fact agree to arbitrate their dispute, the second prong is applied. The United States Supreme Court has instructed that the second prong is "whether legal constraints external to the parties' agreement foreclosed arbitration of those claims." ***Id.*** (quoting ***Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.***, 473 U.S. 614, 626, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985)).

6

¶13.    Addressing the first prong outlined in *East Ford*, Rogers-Dabbs argues that the parties here agreed to arbitrate the issues presented in today's case in that there is a valid arbitration agreement and that Blakeney's claims fall squarely within that arbitration agreement. On the other hand, Blakeney contends that, while there is a valid arbitration agreement, the claims asserted by him are not within the scope of the arbitration agreement which Blakeney signed in his personal capacity and in his official capacity as president of SIC. We set out here in its entirety the provisions of the contract relating to arbitration:

> **ARBITRATION DISCLOSURES.** The following disclosures have been made to you in connection with a transaction between yourself and the Dealer which transaction is described in the Arbitration Agreement between the Dealer and you dated this date:
>
> 1. The Dealer and you have the right to request Arbitration. Arbitration is procedure (sic) in which the Dealer and you select and (sic) Arbitrator who will hear our presentation and render a final and binding decision. There are administrative and arbitration fees which must be paid by the parties in accordance with the provisions of the Arbitration Agreement.
> 2. Arbitration is usually final and binding on the parties and subject to only very limited (sic) by a court.
> 3. The Dealer and you are waiving your right to litigate in court, including your right to a jury trial because each party has the right to demand arbitration.
> 4. Pre-arbitration discovery is generally more limited and different from court proceedings.
> 5. An Arbitrator's award is not required to include factual findings or legal reasoning and the Dealer's and your right to appeal or to seek modification of an Arbitrator's ruling is strictly limited.
> 6. You understand completely that you may be required to pay the arbitrator's fees and the fees charged by the American Arbitration Association before you are allowed to initiate the arbitration, and you further understand that there is a risk that

you will not recover the fees that you are required to pay up front in order to initiate the arbitration.

7. By signing this Arbitration Agreement, you acknowledge and agree that neither the Dealer nor Dealer's employees have forced you to enter into this Arbitration Agreement. You acknowledge and agree that you have signed this Arbitration Agreement knowingly and voluntarily.

## ARBITRATION AGREEMENT

Customer acknowledges and agrees that the Vehicle Customer is purchasing or leasing from Rogers-Usry Chevrolet ("Dealer") has traveled in interstate commerce. Customer thus acknowledges that the vehicle and other aspects of the sale, lease or financing transaction are involved in, affect, or have a direct impact upon, interstate commerce.

Customer and Dealer agree that all claims, demands, disputes or controversies of every kind or nature between them arising from, concerning or relating to any of the negotiations involved in the sale, lease or financing of the vehicle; the terms and provisions of the sale, lease, or financing agreements; the arrangements for financing; the purchase of insurance, extended warranties, service contracts or other products or services purchased or obtained as an incident to the sale; lease or financing of the vehicle; the performance or condition of the vehicle; or any other aspect of the vehicle and its sale, lease, or financing shall be, at the request of either party, settled by binding arbitration conducted pursuant to the provisions of the Federal Arbitration Act, 9 U.S.C. Section 1, et seq. and according to the Commercial Arbitration Rules of the American Arbitration Association ("AAA"). Without limiting the generality of the foregoing, it is the intention of the Customer and the Dealer when so requested by either party, to resolve by binding arbitration all disputes between them concerning the vehicle, its sale, lease, or financing, and its condition, including disputes concerning the terms and conditions of the sale, lease or financing, the condition of the vehicle, any damage to the vehicle, the validity, enforceability or interpretation of any of the documents signed or given in connection with the sale, lease or financing (including, without limitation, this agreement to arbitrate), any representations, promises or omissions made in connections (sic) with negotiations for the sale, lease, or financing of the vehicle, or any terms, conditions, representations or omissions made in connection with the financing, credit life insurance, disability insurance, vehicle extended warranty or service contract or other products or services acquired as an incident to the sale, lease or financing of the vehicle.

8

Either party may demand arbitration by filing with the American Arbitration Association a written demand for arbitration along with a statement of the matter or controversy. A copy of the demand for arbitration shall simultaneously be served upon the party. The customer and the Dealer agree that the arbitration proceedings to resolve all such disputes shall be conducted in the city where the Dealer's facility is located. Customer and Dealer further agree that any question regarding whether a particular controversy is subject to arbitration shall be decided by the Arbitrator.[5]

The institution and maintenance of an action for judicial relief or pursuit of a provisional and ancillary remedy shall not constitute a waiver of the right of either party, including the plaintiff, to submit the controversy or claim to arbitration if any other party contests such action for judicial relief. No provisions of this Agreement shall limit the right of any party to this Agreement to exercise self-help remedies such as the right to repossess and sell any personal property, collateral or security, or to obtain provisional or ancillary remedies from a court of competent jurisdiction before, after, or during the pendency of any arbitration or other proceeding.[6] The exercise of any available remedy does not waive the right of either party to resort to arbitration.

To the extent permitted by applicable law, all proceedings pursuant to or in connection with this Agreement shall be kept strictly confidential, except for disclosures of information required in the ordinary course of business of either party or by applicable law or regulation. This provision does not exempt from discovery or use in any other or future action any evidence otherwise discoverable merely because it is presented in, referred to, or discussed in the course of, or in connection with, proceedings pursuant to this Agreement.

This Agreement shall be binding upon, and shall inure to the benefit of, the parties, any co-signers, endorsers, guarantors, or other obligors to the sale,

---

[5]The issue of whether the arbitrator, as opposed to the court, should decide arbitrability is not before us.

[6]While Blakeney argues unconscionability, he does not attack this particular provision of the arbitration agreement, which is obviously one-sided in favor of Rogers-Dabbs. The exercise of self-help remedies in court is a right which, as a matter of practicality, belongs only to Rogers-Dabbs, and Blakeney enjoys no similar rights of seeking judicial redress. *See, e.g.*, ***Vicksburg Partners, L.P. v. Stephens***, 911 So. 2d 507, 523-24 (Miss. 2005).

lease or financing transaction covered by this Agreement, as well as their respective successors and assigns.

This Agreement is binding upon, and inures to the benefit of, Customer and Dealer and the officers, employees, agents and affiliated entities of each of them. This Agreement will survive payment of Customer's obligations and any termination, cancellation or performance of the transactions between Customer and Dealer. This Agreement specifically contemplates that Customer and dealer may execute additional contracts to finance the sale or lease of a vehicle by Dealer to Customer or for other purposes, and this Agreement is not terminated, supplemented or replaced by any future agreements between Customer or Dealer concerning the vehicle.

CUSTOMER AND DEALER UNDERSTAND THAT THEY ARE AGREEING TO RESOLVE THE DISPUTES BETWEEN THEM DESCRIBED ABOVE BY BINDING ARBITRATION, RATHER THAN BY LITIGATION IN ANY COURT.

| /s/ | 05/30/03 | /s/ | 05/30/03 |
|---|---|---|---|
| Customer | | Dealer | |

¶14.    Rogers-Dabbs asserts that the phrase "all claims, demands, disputes or controversies" specifically covers Blakeney's claims, because all claims originate from the sale of the vehicle and relate to the sale.  However, Blakeney contends the arbitration agreement is unconscionably broad.  In particular, Blakeney contends in his brief to this Court that no consumer in an arms-length negotiation, absent duress, would contract away his constitutional rights to judicial redress and a jury trial when making a purchase if he believed it gave the merchant the green light to commit fraud, forgery, and identity theft, while at the same time precluding the consumer from having his day in court.

¶15.    It should be noted that "[a]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Equifirst*

10

*Corp. v. Jackson*, 920 So. 2d 458, 461 (Miss. 2006) (citing *Pre-Paid Legal Services, Inc. v. Battle*, 873 So. 2d 79, 83 (Miss. 2004) (quoting *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648, 106 S. Ct. 1415, 1418, 89 L. Ed. 2d 648 (1986))). Also, in construing contracts, a general rule is to give effect to the mutual intentions of the parties contracting. *Kight v. Sheppard Bldg. Supply Inc.*, 537 So. 2d 1355, 1358 (Miss. 1989).

¶16. In addressing the two-fold considerations under the first prong (whether the parties agreed to arbitrate the dispute), Blakeney makes no serious contention that there was no valid arbitration agreement, so we will instead focus on the second consideration under the first prong, which is whether the parties' dispute is within the scope of the arbitration agreement. *East Ford*, 826 So. 2d at 713. Without considering the veracity of the well-pled allegations of Blakeney's complaint, which obviously would be subject to proof, we simply consider what Blakeney contends to be the facts surrounding his purchase of the 2003 Hummer. Blakeney contends that he paid more than $64,000 in cash to Rogers-Dabbs in order to get a new Hummer, lien-free. Blakeney asserts, *inter alia*, that he instead received a Hummer to which he has yet to this day received a title; that Rogers-Dabbs's employees have engaged in a scheme of using Blakeney's name to forge vehicle titles and bills of sale to sell stolen vehicles; and that Rogers-Dabbs has committed civil fraud against him by misappropriating his title to the Hummer he purchased and forging his name on "numerous fake titles and bills of sale" on various stolen vehicles. These allegations are the genesis for Blakeney's claims

11

of invasion of privacy, negligent hiring and supervision, civil fraud, and intentional and negligent infliction of emotional distress and mental anguish.[7]

¶17. We have made it clear in prior cases that, when we are called upon to consider whether legal constraints exist external to the agreement which might invalidate the arbitration provisions, the existence of fraud in the formation of the contract may be considered.[8] *Cleveland v. Mann*, 942 So. 2d 108, 112 (Miss. 2006); *MS Credit Center, Inc. v. Horton*, 926 So. 2d 167, 175 (Miss. 2006); *Vicksburg Partners, L. P. v. Stephens*, 911 So. 2d 507, 513-14 (Miss. 2005) (citing *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S.Ct. 1652, 1656; 134 L.Ed.2d 902 (1996)); *Pitts v. Watkins*, 905 So. 2d 553, 555 (Miss. 2005). However, today's case does not involve a claim of fraud in the inducement of the formation of the contract containing the arbitration clause, all in an effort to invalidate the arbitration agreement; instead, today's case involves the claim of civil fraud totally outside the formation of the agreement.[9] While Blakeney no doubt agreed to arbitrate claims that

---

[7]Blakeney's first amended complaint added (in the place of the original breach of warranty claim) the statutory revocation of contract pursuant to the Uniform Commercial Code. Because of the disposition of today's case, we need not address this claim, which was also asserted by Blakeney as an issue on appeal.

[8]Of course, this goes to the second prong ("legal constraints external to the agreement") discussed in *East Ford*, 826 So. 2d at 713-17. Because of our disposition of today's case, we do not reach this second prong.

[9]So that there is no misunderstanding, we are fully aware of our recent decision in *Greater Canton Ford Mercury, Inc. v. Ables*, 2007 Miss. LEXIS 25 (Miss. 2007) (Decided, Feb. 1, 2007, mandate issued, Feb. 22, 2007), wherein we found that because the express provisions of the arbitration agreement stated that the issue of arbitrability was to be determined by an arbitrator, we must honor this agreement between the parties,

12

originated from the sale of the vehicle or related to the sale of the vehicle, no reasonable person would agree to submit to arbitration any claims concerning a Hummer to which he would never receive a title; a scheme of using his name to forge vehicle titles and bills of sale to sell stolen vehicles; and the commission of civil fraud against him by misappropriating his title to the Hummer he purchased and forging his name on fake titles and bills of sale on various stolen vehicles – actions of which Blakeney was presumedly totally unaware at the time of the execution of the documents in question, including the arbitration agreement.

---

notwithstanding the fact that the issue of arbitrability is generally considered one to be determined by the courts. *Greater Canton*, 2007 Miss. LEXIS 25, ¶12, ¶21. In *Greater Canton*, we also determined that comity required us to defer to the Fifth Circuit's decision in related litigation concerning the separate motion to compel arbitration filed by Ford Motor Company. *Greater Canton*, 2007 Miss. LEXIS 25, ¶¶ 22-26. *See Ford Motor Co. v. Ables*, No. 05-60391, 2006 U.S. App. LEXIS 29347 (5th Cir. Nov. 29, 2006). Thus, *Greater Canton* is clearly distinguishable from today's case. We have consistently followed the principle that "applicable contract defenses available under state contract law such as fraud, duress, and unconscionability may be asserted to invalidate the arbitration agreement without offending the Federal Arbitration Act." *East Ford, Inc. v. Taylor,* 826 So. 2d 709, 713 (Miss. 2002) (citing *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686, 116 S. Ct. 1652, 134 L. Ed. 2d 902 (1996)). We wholeheartedly stand behind that proposition today. However, today's case does not involve fraud in the inducement of the arbitration agreement; therefore, the arbitration agreement is valid and enforceable. Blakeney's claim of fraud in the underlying suit is civil fraud outside the scope of the arbitration agreement. Our holding in today's case, in effect, upholds the arbitration agreement as a valid agreement, but determines that Blakeney's claims are outside the scope of the arbitration agreement. Thus, we are finding that Blakeney is not obligated to arbitrate Counts II, III, IV or V. To illustrate this point, the trial judge granted Defendant's Motion to Compel Arbitration as to Count I (breach of warranty), thereby revealing that the arbitration agreement was still in force. By no means are we invalidating the arbitration agreement on the account of Blakeney asserting fraud; we are excluding from arbitration the claims which Blakeney asserts are outside the scope of this particular arbitration agreement; thus, failing to meet the first prong of *East Ford*.

13

¶18. Since Rogers-Dabbs fails to satisfy the first prong of **East Ford** ( whether the parties have agreed to arbitrate the dispute), the second prong (whether legal constraints external to the agreement foreclosed arbitration of the particular claims) need not be discussed. Likewise, based on the disposition of this issue, we deem it unnecessary to consider the other issues raised on appeal.

¶19. Consistent with what we stated in **Pass Termite & Pest Control v. Walker**, 904 So. 2d 1030, 1036 (Miss. 2004), we are of the firm opinion that today's decision in no way undermines what is now a long line of cases from this Court undergirding the federal policy favoring arbitration. However, today's record clearly reveals that the dispute before us was not within the scope of the arbitration agreement; therefore, we are constrained to find that when entering into the arbitration agreement, the parties did not agree to arbitrate this particular dispute.

## CONCLUSION

¶20. The enactment of the Federal Arbitration Act emphasizes that federal law strongly favors arbitration. However, where an arbitration agreement does not cover the claims asserted, as is the case here, then the Federal Arbitration Act is not offended by permitting a full trial on the merits. Therefore, we find that the trial court did not err in denying arbitration as to Counts II-V, inclusive, of Blakeney's complaint. Thus, the judgment of the Circuit Court for the Second Judicial District of Jasper County is affirmed and this case is remanded for further proceedings consistent with this opinion.

¶21. **AFFIRMED AND REMANDED.**

14

**WALLER AND COBB, P.JJ., EASLEY, DICKINSON AND RANDOLPH, JJ., CONCUR. DIAZ AND GRAVES, JJ., CONCUR IN RESULT ONLY. SMITH, C.J., NOT PARTICIPATING.**