# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2006-CA-00024-SCT

*TAMMY SMITH BY AND THROUGH HER FATHER
& NEXT FRIEND, ALVIN CHRISTOPHER SMITH*

v.

*CAPTAIN D'S, LLC*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/21/2005 |
| TRIAL JUDGE: | HON. SHARION R. AYCOCK |
| COURT FROM WHICH APPEALED: | ALCORN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DUNCAN L. LOTT |
| ATTORNEY FOR APPELLEE: | BRADLEY FAREL HATHAWAY |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 06/14/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.     Tammy Smith, by and through her father and next friend, Alvin Christopher Smith, sued Captain D's, LLC, in the Alcorn County Circuit Court for negligent hiring, supervision, and retention based upon alleged rape by a supervisor. The trial judge granted Captain D's motion to compel arbitration and dismissed all of Tammy's claims against Captain D's. Tammy appeals, requesting that this Court reverse the trial court's grant of Captain D's motion to compel arbitration and dismissal of her lawsuit, and remand this case to the trial court for a full trial on the merits. Upon careful consideration of the issues presented, we agree with Tammy and thus reverse the trial court's grant of Captain D's motion to compel

arbitration and dismissal of Tammy's claims, and we remand this case to the trial court for further proceedings consistent with this opinion.

## FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶2.     On February 3, 2004, Tammy Smith (Tammy), then seventeen years old, along with her grandparents[1] visited Captain D's restaurant[2] in Corinth. While they were eating, Tammy's grandmother, saw her friend, Peggy Jones (Jones), a manager of Captain D's. She approached Jones for an employment application for Tammy.  Jones retrieved an employment application and delivered it to Tammy's grandmother. After eating, Tammy and her grandparents left the restaurant with the application.

¶3.     At home, Tammy filled out the application for employment, which included a single-page arbitration agreement entitled "CAPTAIN D'S EMPLOYMENT DISPUTE RESOLUTION PLAN."[3]  The agreement required both Captain D's and Tammy to submit claims between them to binding arbitration.  The agreement stated that if Tammy did file a lawsuit, Captain D's could use the agreement to dismiss the lawsuit and compel arbitration.

---

[1]In July, 2003, Tammy moved in with her grandparents for personal reasons that need not be discussed here.

[2]Captain D's is a seafood restaurant owned and operated by Captain D's, LLC.

[3]There is evidence in the record indicating that Tammy and her grandmother may have actually signed the one-page arbitration agreement while at the restaurant. Captain D's arbitration plan consisted of the single-sheet agreement and a 32-page informational booklet describing the agreement.  Jones testified in her deposition that she was unsure of whether the copy of the booklet she gave Tammy was the December 2003 version or the revised, February 2004 version.

2

¶4.     Jones would later testify that she told Tammy that her grandmother had to sign the agreement because Tammy was a minor. Tammy signed the arbitration agreement as the applicant and her grandmother signed on the line provided for a guardian.[4]

¶5.     On August 17, 2004, Tammy filed suit in the Alcorn County Circuit Court against Captain D's and Christopher Lee Howell (Howell),[5] alleging that Howell, a manager of Captain D's, assaulted and raped her during working hours. Tammy's complaint asserts that Captain D's was negligent in its hiring, supervising, and retention of Howell.

¶6.     On September 16, 2004, Captain D's filed a Notice of Election of Binding Arbitration, Motion to Dismiss Complaint and to Compel Arbitration, and Alternative Motion to Dismiss Based on the Exclusive Remedy of the Mississippi Workers' Compensation Act and Separate Answer Subject to Motions to Compel Arbitration and to Dismiss. Tammy responded by, *inter alia*, objecting to arbitration.

¶7.     The issues were joined and a hearing was held on May 3, 2005, Judge Sharion Aycock, presiding. Judge Aycock subsequently entered a Memorandum Opinion on December 14, 2005, granting Captain D's motion to compel arbitration and dismissing

---

[4] Tammy argues that her grandmother was not her court-appointed guardian and, thus, did not have the authority to sign the arbitration agreement as Tammy's guardian, thereby rendering the agreement ineffective. Captain D's argues that, even if Tammy's grandmother was not Tammy's court-appointed guardian, she was acting *in loco parentis*. Because this has no effect on our decision, we choose not to address this issue today.

[5] Howell proceeded pro se, and he is not a party to this appeal. He answered the lawsuit in the trial court, but did not join in Captain D's motion or otherwise move to compel arbitration.

Tammy's claims against Captain D's in the circuit court. A final judgment consistent with the memorandum opinion was entered on December 28, 2005.

¶8. Tammy submitted her Petition for Interlocutory Appeal to this Court, requesting interlocutory review of the trial court's final judgment. On February 15, 2006, this Court found that final judgment had been entered as to Captain D's pursuant to Miss. R. Civ. P. 54(b), and further found that Tammy's petition for interlocutory appeal should be treated as a timely filed notice of appeal from a final judgment.

## DISCUSSION

¶9. A trial court's grant or denial of a motion to compel arbitration is a question of law; therefore, we apply a de novo standard of review on appeal. *Howard v. Estate of Harper*, 2006 Miss. LEXIS 626, *3 (Miss. 2006) (citing *Sennett v. United States Fid. & Guar. Co.*, 757 So. 2d 206, 209 (Miss. 2000)); *Pre-Paid Legal Servs. v. Battle*, 873 So. 2d 79, 82 (Miss. 2004) (citing *Russell v. Performance Toyota, Inc.*, 826 So. 2d 719, 721 (P 5) (Miss. 2002)). *See also East Ford, Inc. v. Taylor*, 826 So. 2d 709, 713 (Miss. 2002).

¶10. Tammy presents three issues to be decided in today's case: (1) whether a minor may disaffirm an arbitration agreement based on the infancy doctrine; (2) whether the arbitration agreement is unconscionable; and (3) whether the right to arbitration is precluded by the assertion of an alternative affirmative defense. However, finding one issue to be dispositive, we restate the critical issue for clarity in discussion.

**WHETHER THE PARTIES AGREED TO ARBITRATE**

¶11.    In the appellant's brief, Tammy's counsel unquestionably focuses the majority of his argument on Tammy's minority status; however, in discussing the various issues, Tammy acknowledges the basic law on arbitration as discussed by this Court in interpreting the Federal Arbitration Act (FAA) and in applying the decisions of the United States Supreme Court.  In the course of this discussion, Tammy asserts, *inter alia*, that under Mississippi law, the courts, "when determining whether a dispute is subject to arbitration . . . must first ask (1) whether the parties had a valid agreement in arbitration and (2) whether the specific dispute falls within the substantive scope of that agreement." Tammy undergirds this statement by citing our decision in ***East Ford, Inc. v. Taylor***, 826 So. 2d 709, 713 (Miss. 2002).   Tammy also cites ***Thomson-CSF, S.A. v. American Arbitration Association***, 664 F. 3d 773, 776 (2nd Cir. 1995), which stated:

> Arbitration is contractual by nature--"a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." ***United Steelworkers of America v. Warrior & Gulf Navigation Co.,*** 363 U.S. 574, 582, 4 L. Ed. 2d 1409, 80 S. Ct. 1347 (1960). Thus, while there is a strong and "liberal federal policy favoring arbitration agreements," ***Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc***., 473 U.S. 614, 625, 87 L. Ed. 2d 444, 105 S. Ct. 3346 (1985) (quotations omitted), such agreements must not be so broadly construed as to encompass claims and parties that were not intended by the original contract.

*Id.* at 776.

¶12.    Captain D's likewise states, "[w]hen evaluating a motion to compel arbitration it must be shown that a valid agreement to arbitrate exists and whether the dispute in question falls

5

within the scope of that arbitration agreement. *Fleetwood Enterprises, Inc. v. Gaskamp*, 280 F. 3d 1069, 1073 (5th Cir. 2002)."

¶13. This Court's decision in today's case follows on the heels of our recently-decided opinion in *Rogers-Dabbs Chevrolet-Hummer v. Blakeney*, 950 So. 2d 170 (Miss. 2007). In *Rogers-Dabbs*, we once again set out the well-established responsibility of the courts when confronted with arbitration issues by stating that the courts must first determine whether the parties have agreed to arbitration of the dispute and if it is determined that they have, then a determination must be made as to "whether legal constraints external to the parties' agreement foreclosed arbitration of those claims." *Id.* at 173 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)). *See also East Ford*, 826 So. 2d at 713.

¶14. Since our decision today turns on the first prong (whether the parties agreed to arbitrate the dispute), we focus only on this prong. As we have noted on prior occasions, this first prong has two sub-factors: "(1) whether there is a valid arbitration agreement and (2) whether the parties' dispute is within the scope of the arbitration agreement." *Rogers-Dabbs*, 950 So. 2d at 173 (quoting *East Ford*, 826 So. 2d at 713)). In *Rogers-Dabbs*, the vehicle purchaser, Blakeney, executed various documents relating to the purchase, including an arbitration agreement wherein Blakeney agreed with the dealer, Rogers-Dabbs, to submit to arbitration "all claims, demands, disputes or controversies of every kind or nature between them arising from, concerning or relating to" the transaction, including negotiations, financing arrangements, extended warranties, performance of the vehicle, "or any other

6

aspect of the vehicle and its sale, lease, or financing." *Id.* at 174. Blakeney eventually sued Rogers-Dabbs under several theories, asserting that the car dealer's employee(s) had engaged in a fraudulent scheme to use Blakeney's identity to obtain forged titles to stolen vehicles, resulting in Blakeney never receiving title to his vehicle. Rogers-Dabbs filed a motion to compel arbitration based on the arbitration clause in the consumer contract, and the trial court denied the motion to compel arbitration. On appeal, we affirmed the trial court's denial of the motion to compel arbitration. This Court found that the parties' dispute "was not within the scope of the arbitration agreement." *Id.* at 178. In reaching this conclusion, the Court stated that while the purchaser no doubt had agreed to arbitrate claims originating from (or relating to) the sale of the vehicle, "no reasonable person would agree to submit to arbitration any claims [taking the claims as alleged to be true for the sake of argument] concerning a Hummer to which he would never receive a title; a scheme of using his name to forge vehicle titles and bills of sale to sell stolen vehicles; and the commission of civil fraud against him by misappropriating his title to the Hummer he purchased and forging his name on fake titles and bills of sale on various stolen vehicles . . ." *Id.* at 177. Although we found the existence of a valid arbitration agreement, we found, on the other hand, that the dispute between the purchaser and dealer was not within the scope of the arbitration agreement. Thus, we found that the car dealer had failed to satisfy the first prong of *East Ford*, that being whether the parties had agreed to arbitrate the dispute. *Id.* at 176, 178.

¶15. Turning to the facts of today's case, Captain D's Employment Dispute Resolution Plan stated, *inter alia*:

7

> [B]oth Captain D's and I agree to settle any and all previously unasserted claims, disputes, or controversies arising out of or relating to my application for employment, employment and/or cessation of employment with Captain D's, exclusively by final and binding arbitration before a neutral Arbitrator. By way of example only, such claims include claims under federal, state and local statutory or common law, such as the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, as amended, including the amendments of the Civil Rights Act of 1991, the Americans with Disabilities Act, the Family Medical Leave Act, the law of contract and law of tort.
>
> I understand that if I do file a lawsuit regarding a dispute arising out of or relating to my application for employment, employment, or cessations (sic) of employment, Captain D's may use this Agreement in support of its request to the court to dismiss the lawsuit and require me to use arbitration.

Just as in *Rogers-Dabbs*, there is no fervent effort to attack the validity of the arbitration agreement which Tammy signed, other than the assertion of disaffirmance. Therefore, we quickly move to the first prong's second consideration – whether the parties' dispute is within the scope of the arbitration agreement. *Rogers-Dabbs*, 950 So. 2d at 176 (citing *East Ford*, 826 at 713)). In determining the scope of the arbitration agreement, "[c]ourts often characterize arbitration language as either broad or narrow." *MS Credit Ctr., Inc. v. Horton*, 926 So. 2d 167, 175 (Miss. 2006). The United States Supreme Court has found similar language – "any controversy or claim arising out of or related to" – to constitute a broad arbitration provision. *Smith Barney, Inc. v. Henry*, 775 So. 2d 722, 726 (Miss. 2001) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 406, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967)). "Because broad arbitration language is capable of expansive reach, courts have held that it is only necessary that the dispute "touch" matters covered by the contract to be arbitrable." *Horton*, 926 So. 2d at 176 (internal quotation marks omitted).

8

Further, "relate" means "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with; with "to." Black's Law Dictionary 892 (Abridged 6th ed. 1991).

¶16. The question of "scope" is narrowed to whether Tammy's rape claim arises out of or relates to "[Tammy's] application for employment, employment, and/or cessation of employment with Captain D's," so as to subject Tammy's sexual assault claim to arbitration. While recognizing the breadth of the language in the arbitration provision, we unquestionably find that a claim of sexual assault neither pertains to nor has a connection with Tammy's employment.

¶17. In sum, we find that Tammy's sexual assault claim against Captain D's and its employee is clearly not within the scope of the arbitration agreement; therefore, Captain D's "fails to satisfy the first prong of *East Ford* (whether the parties have agreed to arbitrate the dispute)." *Rogers-Dabbs*, 950 So. 2d at 178. Likewise, as we found in *Rogers-Dabbs*, our action today does not offend the Federal Arbitration Act by remanding this case for a full trial on the merits of the case. *Id.*

¶18. For the reasons stated, we find this issue to have merit, and since this issue is dispositive, we deem it unnecessary to address the other issues raised on appeal.

**CONCLUSION**

¶19. For the reasons stated, the Alcorn County Circuit Court's judgment compelling Tammy to arbitration and dismissing her claims is reversed, and this case is remanded to the trial court for further proceedings consistent with this opinion.

9

¶20. **REVERSED AND REMANDED.**

**SMITH, C.J., WALLER, P.J., EASLEY, RANDOLPH AND LAMAR, JJ., CONCUR. DIAZ, P.J., AND GRAVES, J., CONCUR IN RESULT ONLY. DICKINSON, J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

**DICKINSON, JUSTICE, DISSENTING:**

¶21. After much discussion with my fellow justices comprising the majority concerning our respective views in this case, and after carefully reexamining my own view, I unfortunately find it impossible to withhold this dissent. This is so, even though my disagreement with the majority's conclusions is slight. The majority and I are in agreement that Tammy Smith and Captain D's entered a valid, binding arbitration agreement. There were no other issues raised by the parties and briefed to the trial court or to this Court on appeal. Thus, the majority today takes the unusual step of deciding an interlocutory appeal on an issue never raised or briefed by either party, and not discussed by the trial court.

¶22. My disagreement with the majority may be summarized as follows: The majority correctly concludes that Tammy must submit her claims to arbitration if they "arise out of or relate to her employment." However, the majority then decides (apparently as a matter of law) that Tammy's claims do not relate to her employment. It is my view that we don't know whether they do or not because the issue (which I believe to be fact-intensive) was

never raised with the trial court,[6] and was neither raised nor briefed here.[7] Thus, I respectfully dissent from the majority's disposition of this case, and would instead remand the case for an evidentiary hearing.

¶23. Tammy, who was an employee of Captain D's, alleges that her employer was negligent in hiring, supervising, and retaining her manager, Christopher Howell, and that she was assaulted by her manager at the restaurant.

¶24. I think it important to note here that, in its zeal to separate what it calls "Tammy's rape claim" from the scope of her arbitration agreement, the majority fails to absorb the fact that Tammy filed no "rape claim" against Captain D's. Her claim against Captain D's (as the majority recognizes and states elsewhere in its opinion) is for "negligent hiring, supervision, and retention" of her manager, Howell.[8] Thus, this Court is not really being

---

[6]Tammy raised three issues with the trial court in opposition to Captain D's motion to compel arbitration. She claimed (1) that the Mississippi Arbitration Act did not apply to minors; (2) that her grandmother, Pat Spencer, (who co-signed the arbitration agreement) did not hold the status of plaintiff's guardian; and (3) that the cost of arbitration was prohibitive.

[7]The trial judge granted Captain D's motion to compel arbitration. Tammy filed an interlocutory appeal with this Court, raising the issues of (1) whether a minor may disaffirm an arbitration agreement; (2) whether the arbitration agreement was unconscionable; and (3) whether Captain D's should be prevented from compelling arbitration after asserting the affirmative defense of "exclusive remedy" under the Workers Compensation Act. In her order, Judge Aycock stated it was "apparent Plaintiff's real contention is that Plaintiff, due to her minority status, should not be bound by the arbitration agreement."

[8]Tammy did, of course, file a "rape claim" against Howell (the perpetrator). However, neither Howell nor Tammy's rape claim against him is before us.

11

called upon today (as the majority asserts) to decide "whether Tammy's rape claim arises out of or relates to" her employment.

¶25.    As stated, there is no dispute that Tammy is bound by the arbitration agreement. Therefore, she must submit her claims against Captain D's to arbitration if they "arise out of or relate to" her employment.  In her efforts before the trial court (and before this Court) to avoid arbitration, Tammy argued only that she was not bound by the agreement.  She neither stated nor implied that she should not be required to arbitrate because her claims did not relate to her employment.[9]

¶26.    Footnote 1, supra, specifically lists Tammy's three arguments, none of which even hint that Tammy takes the position that her claims do not relate to her employment.  The majority, realizing that the issue has not been raised, skillfully and smoothly claims to "restate the critical issue for clarity in discussion."  I'm not sure I know what this means, but I am sure that it would be inaccurate to conclude that the majority's deciding issue somehow flowed from the issue raised before this Court.

¶27.    Not only was the issue never raised nor briefed by any of the parties, but it seems to me its resolution requires an examination of the facts – an examination never conducted by the trial court or the majority.  The trial court never examined the facts because the trial court was presented with no facts on the issue to examine.  This Court, of course, never examined

_____

[9]It could be argued that Tammy's claims against Captain D's so clearly relate to her employment that Tammy's counsel didn't even bother raising the issue with the trial court or here.  One would think if Tammy's counsel concluded the argument had any merit whatsoever, it would have at least been raised and argued.

12

the facts because we were placed by the parties in the same position as the trial court, that is, we were given no facts to examine.

¶28.    All we are told about Tammy's claim is that she alleges in her complaint "[o]n or about February 18, 2004, at approximately 10:00 a.m., at the Captain D's restaurant . . . Howell, while in the scope and scope of his employment injured the plaintiff, Smith, by willfully and intentionally assaulting and raping her on the restaurant premises in the women's restroom." Tammy's complaint further alleges that Captain D's should be held responsible for damages because it negligently hired Howell as a supervisor and failed to properly monitor and supervise him. More significantly, Tammy claims that "Captain D's had a duty to supervise employee, Howell, when he dealt with the public and with fellow employees."

¶29.    In my view, there are many unaddressed factual questions which bear on the issue of whether Tammy's claims against Captain D's of negligent hiring, retention, and supervision of Howell relate to her employment. For instance, we do not know (1) whether the restaurant was open for business, or was closed with the doors locked, with only employees (perhaps only Tammy) locked inside with the manager; (2) whether Tammy was working at the time, and thus was required (as an employee) to be on the premises and under Howell's supervision and control; (3) whether Howell, in his capacity as manager, ordered Tammy to go to the restroom for some pretextual reason, such as to take toilet paper or paper towels; (4) whether customers or other employees were present in the restaurant or in the rest room

13

at the time of the incident; or (5) whether Tammy failed to stop the assault out of fear of losing her job.

¶30.    It seems to me important for the trial court to address these and many other factual questions. For instance (and only by way of hypothetical example), suppose the facts revealed that:

> Tammy reported for work at 9:30 on the day in question, and that the restaurant was not open to the public. No employees other than Tammy and Howell were present. While Tammy was preparing to open the restaurant, Howell (as Tammy's manager) ordered her to fill the paper towel dispenser in the Ladies' restroom. Tammy complied with her manager's order and went into the restroom, and the manager then followed her in and began to assault her. When Tammy attempted to resist, Howell, threatened to fire her if she resisted further, or if she reported the incident. And even though Captain D's was aware that Howell had done the same thing at other restaurants in the past, it hired him anyway.

¶31.    I wish to emphasize that <u>we have no reason to believe that any of these things happened</u>, but neither do we have any reason to know that they didn't. We just don't know, and neither did the trial judge. Under the above hypothetical facts, it could hardly be argued with credibility that Tammy's claim is not "related to" her employment since it was because of her employment that she was present in the store with the doors locked, and was subject to the manager's orders and threats.

¶32.    On the other hand, it could be that Tammy was not working, but just stopped by to get something to eat and Howell, seeing her go into the restroom, followed her in and assaulted her. Again, this is a hypothetical, and we have no reason to believe that the assault alleged

14

by Tammy happened this way. But if it did, it would be difficult to argue that the assault was related to Tammy's employment.

¶33. I firmly believe this matter should be remanded to the trial court for an evidentiary hearing and a determination of whether Tammy's claims against Captain D's relate to her employment. If the trial court, after reviewing the evidence submitted by the parties, concludes that they do, this case should be settled in arbitration. If it does not, then the matter should proceed to trial in the circuit court.

¶34. Because the majority decides this appeal on an issue never raised; ignores the need for a factual determination; and simply decides as a matter of law that Tammy's claims do not relate to her employment, I respectfully dissent.