MAXWELL, J.,
for the Court:
¶ 1. Wfhile Mississippi generally favors the liberal construction of arbitration agreements, a party cannot be compelled to arbitrate disputes he or she did not agree to arbitrate. This case involves the purchase of a home from Noble Real Estate Inc., which was the home’s builder, seller, and listing broker. After moving in, the buyers endured a variety of problems with the home and eventually sued Noble. The buyers had signed a purchase agreement containing an arbitration clause that expressly limited the scope of arbitration to claims against the listing broker. Because the buyers’ claims for negligent construction and repair and breach of warranties are against Noble in its capacity as the builder and seller only — not the listing broker — they are outside the scope of the arbitration clause. Thus, we affirm the denial of arbitration on these claims and remand for trial.
¶ 2. But the buyers’ other claims — negligent misrepresentation of the home’s condition and negligent infliction of emotional distress — are at least partly asserted against Noble in its capacity as the home’s listing broker. So they fall within the scope of the arbitration clause. Thus, we reverse the denial of arbitration on these *200 claims and remand with directions to compel arbitration.
Background

A. Complaint

¶ 3. Robert and Heather Seder purchased a new home from Noble. After they moved into the house, they allegedly experienced a variety of plumbing and construction-related problems. Sewage backed up into the bathtubs and showers, mold started growing in the kitchen, and twice Noble had to rebuild the kitchen island.
¶ 4. The Seders sued Noble in the Madison County Circuit Court.[1] In their complaint, they identified Noble as their home’s general contractor and alleged that Noble (1) negligently built and repaired their home, (2) breached “certain express and implied warranties,” including the implied warranty of workmanship and the implied warranty of habitability, when building and repairing their home, and (3) falsely represented the home’s condition at the time of sale. Based on all of these actions, they also alleged Noble (4) negligently inflicted emotional distress upon them.

B. Motion to Stay and Compel Arbitration

¶ 5. Noble responded by filing a motion to stay and compel arbitration. Noble pointed to the purchase contract, which included an addendum titled:
MANDATORY ARBITRATION ADDENDUM
Brokers and Agents
In this addendum, both the buyer, Robert Seder,[2] and the seller, Noble, agreed:
All disputes and controversies of every kind and nature arising out of and in connection with the real estate transaction as against the Listing Broker, the Selling Broker (if any) and/or their agents or representatives shall be submitted to arbitration pursuant to the procedure set forth in this agreement.
(Emphasis added).
¶ 6. The circuit court held that, while the Seders had entered into a valid arbitration agreement, this agreement strictly limited arbitration to claims against a real estate broker arising from the real estate transaction. Because the court found none of the Seders’ claims fell within the scope of the arbitration clause, the court denied Noble’s motion to compel arbitration. Noble appealed.
Standard of Review
¶ 7. We conduct a de novo review of the grant or denial of a motion to compel arbitration. See E. Ford, Inc. v. Taylor, 826 So.2d 709, 713 (¶ 9) (Miss.2002). Our review consists of a two-prong inquiry, asking (1) “whether the parties have agreed to arbitrate the dispute” and, if so, (2) “whether legal constraints external to the parties’ agreement foreclosed arbitration of those claims.” Rogers-Dabbs Chevrolet-Hummer, Inc. v. Blakeney, 950 So.2d 170, 173 (¶ 12) (Miss.2007) (quoting E. Ford, 826 So.2d at 713 (¶¶ 9-10)). Here, the trial court found Noble failed on the first prong.
¶ 8. With respect to this first prong, there are two considerations — “(1) whether there is a valid arbitration agreement and (2) whether the parties’ dispute is within *201 the scope of the arbitration agreement.” E. Ford, 826 So.2d at 713 (¶ 9). Because there is no claim that the arbitration clause was invalid, our inquiry involves the scope of the arbitration agreement, and what, if any, claims are within it. For purposes of determining whether the Seders’ claims fell within the scope of the arbitration addendum, we do not consider “the veracity of the well-pled allegations” but instead “simply consider what [the Seders] contend[] to be the facts surrounding” the purchase of them home. Rogers-Dabbs, 950 So.2d at 176 (¶ 16).
¶ 9. Noble asserts that because it wore a variety of different hats — by acting as the home’s builder, seller, and listing broker— the Seders agreed to arbitrate all claims against Noble connected with the home’s purchase.
Discussion
¶ 10. “Arbitration is a matter of contract[.]” Pre-Paid Legal Servs., Inc. v. Battle, 873 So.2d 79, 83 (¶ 13) (Miss.2004) (quoting AT & T Techs., Inc. v. Commc’ns Workers of Am., 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)). We acknowledge the federal policy favoring arbitration “leaves no place for the exercise of discretion” and requires courts to compel arbitration on issues that the parties have contracted to arbitrate. Century 21 Maselle & Assocs. v. Smith, 965 So.2d 1031, 1036 (¶ 8) (Miss.2007) (quoting Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985)). But this pro-arbitration preference does not and cannot mandate courts to compel arbitration on issues the parties never agreed to arbitrate. See B.C. Rogers Poultry, Inc. v. Wedgeworth, 911 So.2d 483, 487 (¶ 8) (Miss.2005). Our courts will “not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated.” Id. (quoting EEOC v. Waffle House, Inc., 534 U.S. 279, 294, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002)). Nor can a party “be required to submit to arbitration any dispute which he has not agreed so to submit.” Pre-Paid Legal Servs., 873 So.2d at 83 (¶ 13) (quoting AT & T Techs., 475 U.S. at 648, 106 S.Ct. 1415).
¶ 11. Under the contract here, the buyers agreed with the home builder and seller to arbitrate some but clearly not all claims between them. We find the scope of the arbitration addendum is expressly limited to disputes against the listing broker. That Noble also acted as the home’s listing broker in addition to the builder and seller, does not entitle Noble to go beyond the language of the arbitration addendum. Though we recognize the policy favoring arbitration, Noble cannot compel arbitration for claims the Seders never agreed to arbitrate — claims that have nothing to do with Noble’s actions as the listing broker.
I. What Is the Scope of the Arbitration Clause?
¶ 12. According to the arbitration addendum’s plain language, to fall -within the scope of the arbitration clause, the Seders’ claims have to be both: (1) connected with the real estate transaction and (2) against the real estate broker.

A. Narrow Versus Broad

¶ 13. Noble asks us to focus solely on the first phrase of the arbitration addendum. Noble suggests we should find the Seders’ claims are arbitrable merely because they fall within the arbitration clause’s broad “in connection with” language. Noble relies on the Fifth Circuit’s distinction between “broad” and “narrow” arbitration language — a distinction also applied by the Mississippi Supreme Court. E.g., MS Credit Ctr., Inc. v. Horton, 926 So.2d 167, 175-76 (¶ 24) (Miss.2006) (citing *202 Pennzoil Exploration & Prod. Co. v. Rameo Energy Ltd., 139 F.3d 1061, 1067 (5th Cir.1998)).
¶ 14. “Broad arbitration language governs disputes ‘related to’ or ‘connected with’ a contract,” while narrow arbitration language expressly limits arbitration to disputes “arising out of’ the contract. Id. at 176 (¶ 24). If arbitration language is broad, arbitration is “not limited to claims that literally ‘arise under the contract.’ ” Pennzoil Exploration, 139 F.3d at 1067. Instead, it is enough that “the dispute ‘touch’ matters covered by the [arbitration agreement] to be arbitra-ble.” Id. at 1068 (citations omitted).
¶ 15. We agree with Noble that, based on the arbitration agreement’s “in connection with language,” the Seders’ claims do not literally have to arise out of the real estate transaction — the transfer of title from the seller to the buyer — to be arbi-trable. But while the first phrase of the arbitration clause encompasses a broad array of claims, the second phrase expressly limits arbitration to claims specifically directed against the real estate broker. Therefore, we find the arbitration clause is actually quite narrow, not broad. Cf. B.C. Rogers Poultry, 911 So.2d at 488-89 (¶¶ 13-15) (finding an arbitration clause limited to disputes arising “during the period of this agreement” to be narrow). So, it is not enough that the Seders’ claims “touch on” the real estate transaction, as Noble suggests. To fall within the arbitration clause, these claims must also be asserted against Noble for acts performed in its capacity as the listing broker.

B. Reviewing the Contract as a Whole

¶ 16. Because arbitration is a matter of contract, courts employ ordinary contract-construction principles to determine the intent of the parties. E.g., id. at 487 (¶ 8) (applying plain-meaning doctrine to arbitration contracts). And under the “four-corners test,” we look to the language the parties used in their contract, “reading] the contract as a whole, so as to give effect to all of its clauses.” One S., Inc. v. Hollowed, 963 So.2d 1156, 1162 (¶ 10) (Miss.2007) (citations omitted).
¶ 17. We find the intent of the arbitration clause — that it covers only the Seders’ claims against Noble when acting as the home’s listing broker — is even more evident reading the purchase contract as a whole. Paragraph 14 of the purchase contract gives the seller and buyer certain rights and remedies if either breaches the purchase contract. If the seller breaches, the listing broker shall be paid a full commission. And the buyer has the option to accept return of the earnest money and void the contract, sue for damages, or seek specific performance.
¶ 18. If the buyer breaches, the seller has the option to keep the earnest money as liquidated damages, sue for actual damages, or sue for specific performance. Also, if the seller elects to proceed by suing for specific performance “and secures specific performance, [the] Listing Broker shall be paid the full commission.” Thus, paragraph 14 clearly illustrates: (1) the Seders and Noble intended to retain the right to litigate claims for breach of the purchase contract by the buyer or seller, and (2) the contract distinguished the roles of the seller and listing broker.

C. Distinction Between Litigable Versus Arbitrable Claims

¶ 19. Our supreme court has enforced contracts that reserve the right to try some claims, while requiring arbitration of others. In Fradella v. Seaberry, 952 So.2d 165, 170-72 (¶¶ 15-20) (Miss.2007), the supreme court faced a similarly worded real estate contract. A chancellor had held that the contract’s litigation and arbitration clauses, which reserved the right to *203 litigate between the buyer and seller but mandated arbitration of claims against the real-estate brokers, created an ambiguity about what disputes the buyers had agreed to arbitrate. But the supreme court disagreed and reversed the chancellor’s decision. The supreme court found the contract clearly distinguished two separate types of claims — -claims between the seller and buyer, which could be litigated, and claims against the real estate brokers by either the seller or buyer, which were arbi-trable. Id. at 172 (¶¶ — 18—20). Here, we find the purchase contract and arbitration addendum make the same clear distinction of claims.
¶ 20. Though not all of the Seders’ claims are against Noble as the listing broker, Noble argues that, because it acted as both the seller and listing broker, there can be no distinction between which claims are litigable versus arbitrable. Noble reasons that, regardless of whether it acts as the contractor and seller, it is the same legal entity acting as the listing broker. While we appreciate that Noble, the legal entity, remains the same, we note the contract expressly distinguishes Noble’s roles as the seller and listing broker. And it does so, not for purposes of determining who is ultimately liable — Noble the builder and seller versus Noble the listing broker — but for purposes of determining what claims the Seders may pursue in the court system and what claims they must arbitrate.
¶ 21. As the addendum’s title illustrates: it is a “MANDATORY ARBITRATION AGREEMENT” for “Brokers and Agents” and is expressly limited to claims “as against the Listing Broker.” Thus, it is clear the arbitration clause was intended to cover only one category of claims that may arise against Noble — claims for its actions as the home’s real estate broker— and not all claims connected to the home’s sale. So we find only those claims against Noble for actions it took as the home’s listing broker are arbitrable. See id. at 171 (¶ 16) (“accepting] the plain meaning of the instrument as the intent of the parties”).
II. Which Claims Were Brought Against Noble as the Listing Broker?
¶ 22. Having determined the scope of the arbitration addendum, we must next ask which of the Seders’ claims, if any, were brought against Noble for its actions as the listing broker.

A. Claims Outside the Scope of the Arbitration Addendum

¶ 23. The Seders’ first claim is that Noble’s “actions in building, constructing, repairing!,] and/or attempting to repair [the Seders’] home constitute[ ] negligence and/or gross negligence.” We find this claim falls outside the scope of the arbitration agreement, as it solely relates to Noble’s actions as the general contractor.
¶ 24. The Seders also allege Noble “issued to [the Seders] certain express and implied warranties in connection with their contract and/or undertaking to perform construction and/or repair and/or demolition services.” The Seders claim Noble “materially breached [its] express implied warranties,” which include “the implied warranty of workmanship” and “the implied warranty of habitability.” Because Noble made express and implied warranties to the Seders as builder and seller of the home, we find these claims also fall outside the scope of the arbitration agreement.

B. Claims Within the Scope of the Arbitration Addendum

¶ 25. There is a third claim by the Seders — that Noble “made false oral *204 and/or ... written representations regarding the condition of the home at the time of sale.” Since representations made by-Noble in its capacity as the seller cannot be distinguished from representations made in its dual capacity as the listing broker, we find this claim is within the scope of the arbitration agreement.
¶ 26. Finally, the Seders allege that “[a]s a result of the negligence and gross negligence of [Noble], [they] have suffered severe emotional distress.” The complaint does not base this claim solely on Noble’s alleged negligence in building and repairing the home. Because the claim is founded in part on Noble’s supposed negligent misrepresentation, we find this claim also falls within the scope of the arbitration agreement.

C. Interiwining-Claims Doctrine Is Inapplicable

¶ 27. Alternatively, Noble implies that, because it has the right to compel arbitration of some of the Seders’ claims, based on the doctrine of intertwining claims, we should compel arbitration of the others too. This doctrine is typically reserved for non-signatories to a contract. It allows a non-signatory third party to enforce an arbitration agreement against a contracting party if “the claims ... are ‘fundamentally grounded’ in, ‘intimately founded in and intertwined with’ or ‘arise out of and relate directly to’ the agreement containing the arbitration clause.” Gulf Guar. Life Ins. Co. v. Conn. Gen. Life Ins. Co., 957 F.Supp. 839, 841 (S.D.Miss.1997) (citations and quotations omitted); see also Grigson v. Creative Artists Agency, 210 F.3d 524, 527 (5th Cir.2000) (finding claims are intertwined when they “raise[ ] allegations of substantially interdependent and concerted misconduct by both the nonsig-natory and one or more of the signatories to the contract” (quoting MS Dealer Serv. Corp. v. Franklin, 177 F.3d 942, 947 (11th Cir.1999))). Noble admits the doctrine is inapplicable because it was a party to the contract. Yet, by way of analogy, it impliedly suggests that because all of the Seders’ claims are significantly interwoven with those covered by the arbitration addendum, every claim must be arbitrated.
¶ 28. Noble is correct that the intertwining-claims doctrine does not apply. As a signatory, Noble is both bound by and has a right to enforce the arbitration addendum. Still, even as a “third-party,” Noble could only arbitrate the claims intertwined with those covered by the arbitration addendum — claims based on Noble’s role as the listing broker. Noble cannot circumvent the express language of the arbitration addendum and enforce arbitration of claims that are not arbitrable.
¶ 29. Instead of applying an admittedly inapplicable doctrine, we look to our supreme court and how it has addressed.a complaint asserting claims both inside and outside the scope of an arbitration clause. In Rogers-Dabbs, the Mississippi Supreme Court found the federal policy favoring arbitration “is not offended by permitting a full trial on the merits” for disputes the parties clearly did not intend to arbitrate, even though some claims did fall within the scope of the arbitration clause. Rogers-Dabbs, 950 So.2d at 177-78 (¶¶ 17-20). Similarly, the Seders and Noble did not agree to arbitrate every claim between them — -just “all claims ... in connection with the real estate transaction as against the Listing Broker.” Therefore, Noble’s contractual right to enforce arbitration of some claims does not entitle it to arbitration of all claims.
Conclusion
¶ 30. We find the arbitration addendum expressly limited the scope of arbitration to claims against Noble in its capacity as the listing broker. By signing the arbitra *205 tion agreement, the Seders did not agree to arbitrate their claims that Noble, as the home’s general contractor, negligently built and repaired the home and, as the home’s seller, breached expressed and implied warranties. Because the Seders cannot be compelled to arbitrate these claims, we affirm the denial of arbitration for these claims and remand for trial.
¶ 31. However, the Seders did agree to arbitrate their claim that Noble misrepresented the home’s condition, since such representations were made in its capacity both as the seller and real estate broker. The Seders’ claim for negligent infliction of emotional distress also falls within the scope of the arbitration addendum because it is partly based on Noble’s actions as the real estate broker. Therefore, we reverse the denial of arbitration of these claims. On remand, we direct the circuit court to compel the parties to submit these claims to arbitration.
¶ 32. THE JUDGMENT OF THE MADISON COUNTY CHANCERY COURT DENYING THE MOTION TO COMPEL ARBITRATION IS AFFIRMED IN PART AND REVERSED IN PART, AND THIS CASE IS REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE DIVIDED EQUALLY BETWEEN THE APPELLANT AND THE APPELLEES.
LEE, C.J., IRVING, P.J., BARNES, ISHEE, ROBERTS, RUSSELL AND FAIR, JJ., CONCUR. CARLTON, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. GRIFFIS, P.J., NOT PARTICIPATING.

. The Seders also sued Noble’s plumbing subcontractor, which did not file an answer, did not join Noble’s motion to compel arbitration, and is not party to this appeal.

. Heather Seder does not argue that the arbitration clause is inapplicable to her because she did not sign it. The Seders acknowledge Robert signed the contract and addendum on both his and Heather’s behalf.